## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| PATRICK THOMAS, <br><br> Plaintiff <br><br> v. <br><br> COOK CHILDREN'S HEALTH CARE SYSTEM, COOK CHILDREN'S PHYSICIAN NETWORK, AND COOK CHILDREN'S MEDICAL CENTER, and in their individual and official capacities, RICK MERRILL, NANCY CYCHOL, W. BRITT NELSON, LARRY REAVES, and DONALD BEAM, <br><br> Defendants | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> §     Civil Action No. 4:20-cv-1272-O |

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S ORIGINAL COMPLAINT AND BRIEF IN SUPPORT

Steven H. Stodghill
Tex. Bar No. 19261100
sstodghill@winston.com
Geoffrey S. Harper
Tex. Bar No. 00795408
gharper@winston.com
Claire E. Dial
Tex. Bar No. 24116283
cdial@winston.com
*Application for Admission to N.D. Tex. Pending*
**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: 1-214-453-6500
Telefax: 1-214-453-6400

Cardelle B. Spangler
Ill. Bar No. 6242570
cspangler@winston.com
*Pro Hac Vice Application to Be Filed*
**WINSTON & STRAWN LLP**
35 West Wacker Drive, Suite 40
Chicago, IL 60601
Telephone: 1-312-558-5600
Telefax: 1-312-558-5700

*ATTORNEYS FOR DEFENDANTS*

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL BACKGROUND .............................................................................. 2

    A.      Cook Children's Purpose and Use of Evaluation Tools to Review its Doctors..... 2

    B.      Plaintiff's Employment with Cook Children's. .......................................... 3

        1.      Plaintiff's extensive history of alleged bad conduct. .............................. 4

        2.      Cook Children's attempts to resolve the complaints and renew
              Plaintiff's employment contract. .................................................................. 4

III.    ARGUMENT AND AUTHORITIES ................................................................ 8

    A.      Legal Standard for a Motion to Dismiss ....................................................... 8

    B.      Plaintiff does not state a claim for racial discrimination, hostile work
        environment, or retaliation under 42 U.S.C. § 1981 (Claims 1-3)..................... 9

        1.      Claim 1: Plaintiff fails to properly allege a cause of action for racial
              discrimination under § 1981. .......................................................................... 9

              a.      Plaintiff has not properly pled discriminatory intent. .................... 9

              b.      Plaintiff has not pled "but for" causation...................................... 11

        2.      Claim 2: Plaintiff has not pled facts that can support a cause of action
              for a hostile work environment under § 1981........................................... 12

        3.      Claim 3: Plaintiff cannot allege a claim for retaliation under § 1981 as
              he asserts no connection between his race/sex and his employment. ........ 15

    C.      Plaintiff does not state a claim under Title V ....................................... 17

        1.      Claim 4: Plaintiff fails to state a cognizable claim for race
              discrimination under Title VII against Cook Children's. ......................... 17

        2.      Claim 5: Plaintiff's claim for race plus sex discrimination under Title
              VII against Cook Children's fails due to his failure to allege disparate
              treatment. ....................................................................................................... 19

        3.      Claim 6: Plaintiff has not presented a valid claim for a hostile work
              environment under Title VII against Cook Children's. ........................... 19

        4.      Claim 7: Plaintiff cannot support a claim for retaliation under Title VII
              against Cook Children's............................................................................... 20

    D.      Plaintiff does not state a claim for disability discrimination or retaliation under
        the ADA (Claims 8–9) ...................................................................................... 20

        1.      Claim 8: Plaintiff has not plausibly pled a claim for disability
              discrimination under the ADA against Cook Children's. ......................... 20

        2.      Claim 9: Plaintiff has not properly pled a claim for retaliation under
              the ADA against Cook Children's. ........................................................... 22

E.    Plaintiff fails to state a claim for relief under Chapter 21 of the Texas Labor Code (Claims 10–15) ........................................................................................ 24

    1.    Claim 10–14: Plaintiff's claims of race discrimination, sex discrimination, hostile environment, and retaliation claims under Chapter 21 of the Texas Labor Code against Cook Children's similarly fail. ........................................................................................ 24

    2.    Claim 15: Plaintiff's claim of disability discrimination under Chapter 21 of the Texas Labor Code against Cook Children's fails due to Plaintiff's lack of a disability. ............................................................. 24

IV.    CONCLUSION .............................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Sw. Airlines*,
   No. 3:18-cv-3394-G-BN, 2019 WL 1386183 (N.D. Tex. Mar. 5, 2019) ...............................14

*Adetoro v. King Abdullah Academy*,
   No. 1:19-cv-01918, 2020 WL 7122858 (D.D.C. Dec. 4, 2020) .......................................11, 12

*Alkhawaldeh v. Dow Chem. Co.*,
   851 F.3d 422 (5th Cir. 2017) .......................................................................................16, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................8, 19

*Besser v. Tex. Gen. Land Office*,
   __ F. App'x ___, 2020 WL 6476707 (5th Cir. Nov. 3, 2020) .................................23

*Body by Cook, Inc. v. State Farm Mutual Auto. Ins.*,
   869 F.3d 381 (5th Cir. 2017) ..........................................................................................9, 10

*Brooks v. Firestone Polymers, L.L.C.*,
   640 F. App'x 393 (5th Cir. 2016) ..................................................................................12, 20

*Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*,
   871 F. Supp. 2d 581 (S.D. Tex. 2012) ......................................................................10, 11, 18

*C & K Trucking LLC v. Ardent Mills LLC*,
   No. 3:20-CV-1104-K, 2021 WL 211547 (N.D. Tex. Jan. 20, 2021)......................................9

*Carter v. Burlington N. Santa Fe LLC*,
   No. 4:15-cv-366-O, 2015 WL 11022766 (N.D. Tex. Oct. 9, 2015) ......................................17

*Clark Cnty. Sch. Dist. v. Breeden*,
   532 U.S. 268 (2001)...........................................................................................................16

*Clark v. Champion Nat'l Security, Inc.*,
   952 F.3d 570 (5th Cir. 2020) .............................................................................................25

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
   140 S. Ct. 1009 (2020)........................................................................................................9

Contrast *Dediol v. Best Chevrolet, Inc.*,
　655 F.3d 435 (5th Cir. 2011) ................................................................13

*Corrica v. Am. Airlines*,
　No. 3:20-CV-0679-B, 2020 WL 7711830 (N.D. Tex. Dec. 28, 2020) .............................18, 19

*Dallas Roof Gardens, Inc. v. City of Dallas*,
　No. 3:07-CV-696-O, 2009 WL 855805 (N.D. Tex. Mar. 31, 2009)...................................2, 8

*David v. Dall. Indep. Sch. Dist.*,
　448 F. App'x 485 (5th Cir. 2011) ..............................................................17

*Diggs v. Burlington N. & Santa Fe Ry. Co.*,
　742 F. App'x 1 (5th Cir. 2018) ................................................................21

*Domino v. Kentucky Fried Chicken*,
　No. 19-CV-08449, 2020 WL 5847306 (N.D. Cal. Oct. 1, 2020) .................................11

*Fiest v. Louisiana*,
　730 F.3d 450 (5th Cir. 2013) ................................................................16

*Foster v. Solvay Pharms., Inc.*,
　160 F. App'x 385 (5th Cir. 2005) .............................................................17

*Gallentine v. Hous. Auth.*,
　919 F. Supp. 2d 787 (E.D. Tex. 2013).......................................................17, 18

*Ganheart v. Brown*,
　740 F. App'x 386 (5th Cir. 2018) .............................................................16

*Hanks v. Shinseki*,
　No. 3:08-1594-G, 2010 WL 3000835 (N.D. Tex. July 28, 2010) .............................17

*Hebert v. Unum Grp.*,
　No. 4:18-CV-00910, 2020 WL 7074706 (E.D. Tex. Sept. 11, 2020)...........................17

*Hernandez v. Yellow Transp., Inc.*,
　670 F.3d 644 (5th Cir. 2012) ...............................................................12, 20

*Johnson v. VT Halter Marine, Inc.*,
　820 F. App'x 283 (5th Cir. 2020) .............................................................12

*Jones v. Robinson Prop. Grp. L.P.*,
　427 F.3d 987 (5th Cir. 2005) ................................................................10

*Nasti v. CIBA Specialty Chems. Corp.*,
　492 F.3d 589 (5th Cir. 2007) ................................................................18

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002).................................................................19

*Perez v. Tex. Dep't of Crim. Justice*,
   395 F.3d 206 (5th Cir. 2004) .............................................10

*Puente v. Ridge*,
   324 F. App'x 423 (5th Cir. 2009) .......................................18

*Quantum Chem. Corp. v. Toennies*,
   47 S.W.3d 473 (Tex. 2001)................................................24

*Sharifi Takieh v. Banner Health*,
   No. CV-19-05878, 2021 WL 268808 (D. Ariz. Jan. 27, 2021) .........................11, 12

*Sherrod v. United Way Worldwide*,
   821 F. App'x 311 (5th Cir. 2020) .......................................10

*Sonnier v. State Farm Mutual Auto. Ins. Co.*,
   509 F.3d 673 (5th Cir. 2007) ..............................................2

*Stewart v. AutoRevo, Ltd.*,
   No. 3:17-CV-0019-B, 2017 WL 5177119 (N.D. Tex. Nov. 8, 2017)..................21

*Strong v. Univ. Healthcare Sys., LLC*,
   482 F.3d 802 (5th Cir. 2007) .............................................16

*West v. City of Hous.*,
   960 F.3d 736 (5th Cir. 2020) .............................................14

*White Glove Staffing, Inc. v. Methodist Hosps. of Dall.*,
   947 F.3d 301 (5th Cir. 2020) .............................................15

*Yancy v. U.S. Airways, Inc.*,
   469 F. App'x 339 (5th Cir. 2012) .......................................16

*Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*,
   No. 3:16-cv-1034-D, 2017 WL 274133 (N.D. Tex. Jan. 20, 2017)..................14

**Statutes**

42 U.S.C. § 1981..................................................................*passim*

TEX. LAB. CODE § 21.001(1)...............................................24

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................................................1, 8, 25

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Cook Children's Medical Center, Cook Children's Physician Network and Cook Children's Health Care System (collectively "Cook Children's") and Rick Merrill, Nancy Cychol, W. Britt Nelson, Larry Reaves, and Donald Beam (collectively "Individual Defendants"), move this Court to dismiss Plaintiff Patrick Thomas's Original Complaint for failure to state a claim as follows:

## I.  **<u>INTRODUCTION</u>**

The Court should dismiss Plaintiff's Original Complaint in its entirety. Although the Complaint consists of 54 pages, 357 paragraphs, and 15 causes of action, the facts alleged do not present a plausible claim for relief against any of the Defendants. The gravamen of Plaintiff's Complaint is that he was allegedly the victim of discriminatory conduct due to his race/gender/disability that led to the termination of his employment. However, the facts as pled fail to show that Defendants engaged in any improper action and, instead, lay out the nondiscriminatory actions that impacted Plaintiff's employment. Plaintiff admits that twenty-one different complaints were made to Cook Children's regarding his conduct. Plaintiff does not allege that the complaints were filed against him because of his race, gender, or perceived disability. And despite the fact that Plaintiff admits that Cook Children's was required to investigate and act in response to any complaint it received, he asserts that Cook Children's decision to investigate and act upon *these particular complaints* must have been because of such alleged animus, or because he was "regarded as disabled," or in retaliation for his alleged complaints of race and disability discrimination, or for the purpose or having the effect of creating a hostile work environment. And Plaintiff maintains these allegations despite not asserting that any other individuals in similar circumstances were treated more favorably. The law does not allow such broad claims of discrimination, harassment, or retaliation to proceed without more.  A party cannot pursue the causes of action asserted here without factually plausible claims of bias. As no such claims exist

here to meet the Fifth Circuit's pleading standard, the Court should dismiss the Complaint in its entirety.

## II.    FACTUAL BACKGROUND[1]

### A.    Cook Children's Purpose and Use of Evaluation Tools to Review its Doctors.

Cook Children's is a not-for-profit pediatric hospital with its main campus in Fort Worth, Texas. It opened in 1918 as the Fort Worth Free Baby Hospital with only 30 beds and gradually expanded so to provide for the pediatric medical needs of the growing community. In response to the polio outbreak, the hospital expanded to an additional location in 1961. Through mergers and growth, Cook Children's has grown to be one of the largest freestanding pediatric medical centers in the United States, with more than one million patient encounters every year through its more than sixty medical offices and specialty clinics. Cook Children's is nationally recognized as one of the top pediatric hospitals in the country and its system employs more than 7,000 individuals focused on the health of its young patients.

Because Cook Children's treats extremely ill and fragile children—often in emergent and stressful circumstances—it is critical that its doctors be well qualified and that its staff work together seamlessly to provide exceptional medical care. Over the years, Cook Children's has developed a series of procedures and committees to monitor and evaluate its physicians and to resolve any complaints or allegations that might be raised.

---

[1]    When considering a motion to dismiss, the Court "must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Dallas Roof Gardens, Inc. v. City of Dallas*, No. 3:07-CV-696-O, 2009 WL 855805, at *1 (N.D. Tex. Mar. 31, 2009) (O'Connor, J.) (citing *Sonnier v. State Farm Mutual Auto. Ins. Co*., 509 F.3d 673, 675 (5th Cir. 2007)). As such, although Defendants may disagree with some of the facts listed in the Complaint—and consider them woefully incomplete—Defendants do not challenge such facts at this time and merely present the facts as presented by Plaintiff.

Among Cook Children's evaluation and dispute resolution tools are the use of "Event Reports." *See* Original Complaint and Jury Demand ¶¶ 43–47 (Doc. 1) ("Compl."). Anyone can submit an Event Report to complain about the conduct of Cook Children's physicians. *Id.* ¶ 46. As Plaintiff notes, the "purpose of Event Reports [is] to ensure the best care for patients at all relevant times." *Id.* ¶ 43. Moreover, because these reports are a critical part of the way that Cook Children's ensures the safety of the children it treats, it is mandatory that every Event Report be thoroughly investigated and any allegations addressed. *See id.* ¶ 44 ("All event reports were to be investigated and addressed promptly to ensure the best care for patients.").

### B.    <u>Plaintiff's Employment with Cook Children's.[2]</u>

Plaintiff, an African American male, alleges that he was employed as a pediatric surgeon at Cook Children's. *See id.* ¶ 29. Plaintiff's work was governed by the terms of an employment contract that was set to expire on September 30, 2019. *Id.* ¶¶ 15, 29, 89. Plaintiff, wanting to continue at Cook Children's, applied for a renewal of his contract on or about July 25, 2019. *Id.* ¶ 72. As the hospital began to evaluate his application, it had to deal with some rather serious allegations that had been raised against Plaintiff.

---

[2]     As noted above, the law mandates that the Court accept all of the facts in the Complaint as true at this stage and, as such, the facts listed here are as the Plaintiff has presented them. However, for the sake of clarity, Cook Children's feels the need to point out that the underlying premise of the Complaint is slightly off. In reality, Plaintiff was employed by Defendant Cook Children's Physician Network and was able to treat patients at Defendant Cook Children's Medical Center because he was credentialed to be a member of its medical staff and hold clinical privileges to treat its patients. What was scheduled to expire on September 30, 2019, was not Plaintiff's employment contract, but his medical staff membership and clinical privileges at the hospital. That being said, having credentials to treat patients at Cook Children's Medical Center was a condition of Plaintiff's employment at Cook Children's Physician Network. While this factual inaccuracy in no way impacts the applicable law or the Motion to Dismiss (as the Complaint would be subject to dismissal even if accurately pled), this distinction would be significant at later stages of the litigation should the Court not grant this Motion.

1.    Plaintiff's extensive history of alleged bad conduct.

Beginning in late 2017, a series of Event Reports were filed against Plaintiff. *Id*. ¶ 49. Indeed, in less than nine months, Cook Children's received twelve different and unique Event Reports that each alleged misconduct by Plaintiff. *Id*. Those were followed by even more complaints of improper behavior that Cook Children's received in May 2018, August 2018, and February 2019. *Id*. ¶¶ 52, 55. And the allegations of misconduct did not stop there.

By late 2019, as Plaintiff's employment contract was set to expire and with the hospital needing to decide whether to offer Plaintiff a new agreement, Plaintiff's file had expanded to contain *twenty-one* separate allegations of misconduct (nineteen Event Reports and two other unique complaints). *Id*. ¶ 60.

Critically, Plaintiff does *not* allege that any of the twenty-one complaints of misconduct were motivated by his race or gender, nor that any Defendant was responsible for any of the complaints that were made against him. Similarly, Plaintiff does *not* allege that any of the complaints against him were made in retaliation for his allegations that he was a victim of discrimination.[3]

2.    Cook Children's attempts to resolve the complaints and renew Plaintiff's employment contract.

Soon after Plaintiff applied to renew his contract, he was asked to meet with the president of the physician network and the chair of the Peer Assistance Committee ("PAC") to discuss some

---

[3]    Although Plaintiff states that he complained to Cook Children's on September 13, 2018 that "he was being discriminated against because of his race," Compl. ¶ 38, he provides no detail of what he complained about or what discrimination he allegedly faced.  However, it is clear that he was not asserting that the Event Reports were discriminatory, as Plaintiff states that he was unaware of the existence of those complaints until August 23, 2019, *id*. ¶ 83, and did not see the reports until October 7, 2019.  *Id*. ¶ 60; *see also id.* ¶¶ 51–52, 54, 59.  Moreover, as Plaintiff states that twelve of the twenty-one allegations were made before he complained of discrimination, *see id*. ¶¶ 49, 51, Plaintiff does not and cannot claim that those Event Reports were somehow filed in retaliation for his making a complaint about discrimination.

of the concerns about Plaintiff's behavior raised in the Event Reports. *Id.* ¶ 73. Specifically, they expressed concern about the allegations that Plaintiff had repeatedly behaved abusively toward operating room staff, and asked him whether he thought he could change his behavior. *Id.* ¶¶ 73, 80; *see also id.* ¶¶ 61–65. Rather than discuss his general behavior, Plaintiff wanted to see each of the complaints and respond to each allegation. *Id.* ¶¶ 80, 82. Per his request, certain Event Reports were sent to Plaintiff along with an offer to work with him and help formulate a plan "to make you successful." *Id.* ¶¶ 84–85.

Although Cook Children's had no obligation to renew Plaintiff's contract at all—much less before the twenty-one misconduct allegations were resolved—it reappointed him for 90 days (until December 30, 2020) while the PAC worked on a plan to address Plaintiff's behavior that was the subject of the complaints. *Id.* ¶¶ 89, 102. As Plaintiff notes, the PAC serves multiple purposes, including looking at the mental state **_or_** any impairment of any physician **_or_** unprofessional conduct **_or_** behavioral issues. *Id.* ¶ 104. The PAC was described to Plaintiff in further detail as being assigned to:

> investigate all reports received by them regarding the possible impairment **_or_** unprofessional conduct of a Practitioner, provide advice and assistance to the Practitioner, and make recommendations regarding referral resources to assist in the diagnosis and the treatment of any impairment **_or_** behavioral issues, **_as well as_** resources that may assist a Practitioner in improving his interpersonal relationships.

*Id.* ¶ 131 (emphasis added). (For unknown reasons, although Plaintiff admits the PAC considers many issues other than impairment, such as the unprofessional conduct of its physicians, he somehow concludes—with no possible basis—that the PAC was evaluating him for an alleged impairment.).

The PAC reached out to Plaintiff—never raising any issues of any alleged impairment—to discuss a plan to help Plaintiff "improv[e]' his 'interpersonal relationships' with 'co-workers . . .

to be a successful and valued member of the pediatric surgery department.'" *Id.* ¶ 122.  They also stressed that this was assistance that was being offered so that Plaintiff could continue as a long-term employee of Cook Children's.  *Id.* ¶ 123.

Critically—although somehow not mentioned in the Complaint—this was a process that Plaintiff was well familiar with: approximately 10 years earlier, Plaintiff found himself the subject of numerous Event Reports and was referred to the PAC for assistance. At that time, he met with the PAC, attended counseling, and apparently found success through the process such that complaints about his conduct ceased for several years. During that process, he saw his medical staff membership renewed for short periods several times while he worked on his behavioral issues. Cook Children's had high hopes that a simple series of refresher courses might create the same positive results.

As Plaintiff notes in his Complaint, however, he was utterly uninterested in meeting with the PAC or working on any such issues; instead, he wanted to formally review and respond to all twenty-one complaints that had been made against him. *Id.* ¶ 124. He also wanted to review a plethora of policies and materials regarding Cook Children's and ask various questions about whether it was even "legal" to renew his contract for 90 days. *Id.* ¶¶ 127–30. Simply put, Plaintiff wanted to argue about each complaint made against him rather than focus on the behavior that had caused twenty-one different complaints to be filed. *Id.* ¶¶ 143–46. As Cook Children's repeatedly told Plaintiff, the facts in the complaints and reports were less significant than the fact that so many complaints existed (*i.e.*, the fact that he may have had explanations for certain events failed to address the medical staff's concern that these reports reflected a pattern of abusive behavior toward his subordinates). *Id.* ¶¶ 148–52.

Realizing that something needed to be done, Cook Children's asked Plaintiff to work with an executive coach to improve his interactions with subordinates. Cook Children's agreed to pay 100% of the costs associated with the coach and agreed that Plaintiff could choose the coach he wanted to work with. *Id.* ¶ 158. When Plaintiff complained that he needed more time to select a coach, he was allowed extra time. *Id.* ¶ 169. As this process had dragged out—and again with no legal obligation—Cook Children's agreed to renew Plaintiff's contract for another 60 days, until February 29, 2020. *Id.* ¶ 174.

Despite having selected a coach, Plaintiff never took any steps to begin working with that individual. Instead, Plaintiff remained focused on disputing the validity of the Event Reports and began questioning Cook Children's motivations for investigating those reports. *See id.* ¶ 178. While Plaintiff acknowledges that Cook Children's is required to investigate any Event Reports filed against any doctor, *id.* ¶ 44, Plaintiff suddenly took the position that any action taken on the Event Reports filed *against him*—including the recommendation that he work with a professional coach—violated his rights and were racially motivated, *see id.* ¶¶ 187–91.

On February 20, 2020, Cook Children's offered to extend Plaintiff's appointment another eight months while he went to an executive coach—the one he had already chosen—as well as participated in other activities to monitor and improve his interactions with others. *Id.* ¶¶ 214, 220. Plaintiff said he would not agree to implement the PAC's recommendations for addressing the twenty-one complaints and he would not agree to extend his contract for eight months. *Id.* ¶ 226.

Thus, when the term of Plaintiff's contract ended on February 29, 2020, Plaintiff had no contract of employment at Cook Children's.

III.    **ARGUMENT AND AUTHORITIES**

Plaintiff fails to state a plausible claim for relief under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, the American with Disabilities Act, or the Texas Labor Code. The Court, therefore, should dismiss the Complaint pursuant to Rule 12(b)(6).

A.    **Legal Standard for a Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) challenges whether allegations are sufficient to state claims for relief. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). "The factual allegations of a complaint must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Dall. Roof Gardens*, 2009 WL 855805, at *1. Thus, to avoid dismissal at the pleading stage, a complaint must contain well-pleaded allegations that plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679.

**B.** **Plaintiff does not state a claim for racial discrimination, hostile work environment, or retaliation under 42 U.S.C. § 1981 (Claims 1-3).[4]**

1. Claim 1: Plaintiff fails to properly allege a cause of action for racial discrimination under § 1981.

Plaintiff's claim for race discrimination under § 1981 must be dismissed because he alleges neither discriminatory intent nor but-for causation, both of which are required to plead entitlement to relief. To state a claim for discrimination under § 1981, Plaintiff must show (1) he belongs to a racial minority; (2) Defendants intentionally discriminated against him on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *See Body by Cook, Inc. v. State Farm Mutual Auto. Ins*., 869 F.3d 381, 386 (5th Cir. 2017). In addition, Plaintiff must allege "but-for" causation, *i.e.*, that but for his race, he would not have suffered the complained-of loss. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Neither discriminatory intent nor but-for causation has been properly alleged here.

a. *Plaintiff has not properly pled discriminatory intent.*

Plaintiff does not plausibly allege Defendants intentionally discriminated against him on the basis of race, because he fails to allege that any similarly situated comparators were treated more leniently for similar misconduct. "'[N]aked allegations' of discriminatory intent are too conclusory to survive a motion to dismiss," *C & K Trucking LLC v. Ardent Mills LLC*, No. 3:20-CV-1104-K, 2021 WL 211547, at *3 (N.D. Tex. Jan. 20, 2021), and while discriminatory intent

---

[4]    As described in detail below, Defendants move to dismiss Plaintiff's race discrimination, hostile work environment, and retaliation claims under § 1981 on behalf of all Defendants, on the grounds that Plaintiff has failed to plausibly state a claim for relief. In addition, dismissal of Plaintiff's § 1981 claims against Rick Merrill, Nancy Cychol, W. Britt Nelson, Larry Reaves, and Donald Beam is further justified on the grounds that Plaintiff has failed to plead facts plausibly suggesting that he is entitled to relief against any of these defendants individually. For instance, Plaintiff failed to plead facts plausibly suggesting that any of the Individual Defendants acted with the requisite discriminatory intent to plead a claim for racial discrimination, or that any Individual Defendant took actions against Plaintiff amounting to harassment.

can be shown by circumstantial evidence, a plaintiff must allege facts "sufficient to support an inference of discriminatory intent." *Sherrod v. United Way Worldwide*, 821 F. App'x 311, 316 (5th Cir. 2020). "An allegation that similarly situated non-minorities received better treatment could create the necessary inference and set the predicate for establishing the section 1981 claim." *Body by Cook*, 869 F.3d at 386. In the Fifth Circuit, "similarly situated" is defined narrowly; "[c]omparably serious misconduct," without more, is insufficient; instead, comparators' circumstances must be "nearly identical." *See Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 593 (S.D. Tex. 2012) (quoting *Perez v. Tex. Dep't of Crim. Justice*, 395 F.3d 206, 212 (5th Cir. 2004)).[5]

Despite these well-established rules of pleading, Plaintiff makes only conclusory allegations of discrimination. Compl. ¶¶ 237–38. In addition, Plaintiff does not sufficiently allege the existence of similarly situated non-minority comparators who received better treatment. Plaintiff does not allege even in general terms that ***any*** of the other pediatric surgeons were the subject of ***any*** complaints about their demeanor or behavior toward staff, or any similar issues involving their interpersonal interactions. Thus, Plaintiff's allegations do not support an inference of discriminatory intent. The only comparators identified in the Complaint are Drs. Honeycutt and Mayfield, described as "similarly-situated pediatric surgeons who are both white males" and who are both taller than Plaintiff. Compl. ¶¶ 154–55. Plaintiff states that Drs. Honeycutt and Mayfield were not subject to certain treatment Plaintiff received, namely referral to the PAC in the same way or having their employment reappointment limited to a 90-day period. *Id*. ¶ 157. However, Plaintiff fails to allege facts suggesting that Drs. Honeycutt and Mayfield are similarly situated

---

[5]    *Brown v. Board of Trustees* considered the sufficiency of similarly situated comparators in the Title VII context, but this analysis of discrimination claims under § 1981 is identical to that of Title VII claims. *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005).

and presented "nearly identical" circumstances as Plaintiff. *See Brown*, 871 F. Supp. 2d at 593. For instance, while Plaintiff alleges all pediatric surgeons working at Cook Children's receive Event Reports, Compl. ¶¶ 46–48, he does not specifically allege that Drs. Honeycutt and Mayfield received Event Reports, or if they did, that they received a similarly large number of reports (twenty-one), or any reports containing allegations of similar behavioral issues. *Id.* ¶¶ 61–65. And ***even if*** Plaintiff had alleged that they were accused of similar misconduct—which he does not— that fact alone would not mean they are similarly situated. *See Brown*, 871 F. Supp. 2d at 593. Accordingly, Drs. Honeycutt and Mayfield are improper comparators, and because the Complaint contains no other allegations capable of supporting an inference of discriminatory intent, Plaintiff fails to state a claim for discrimination under § 1981.

b. <u>*Plaintiff has not pled "but for" causation.*</u>

Plaintiff's § 1981 discrimination claim is further deficient because it lacks the necessary but-for causation. If the Complaint identifies an independent, non-discriminatory reason for the alleged adverse action, but-for causation is not shown. *See, e.g.*, *Sharifi Takieh v. Banner Health*, No. CV-19-05878, 2021 WL 268808, at *5–6 (D. Ariz. Jan. 27, 2021); *Adetoro v. King Abdullah Academy*, No. 1:19-cv-01918, 2020 WL 7122858, at *4–5 (D.D.C. Dec. 4, 2020); *Domino v. Kentucky Fried Chicken*, No. 19-CV-08449, 2020 WL 5847306, at *2 (N.D. Cal. Oct. 1, 2020).

Here, Plaintiff's own allegations acknowledge other reasons for his contract not being renewed, apart from alleged racial discrimination: namely, the nineteen Event Reports and two complaints recounting various concerns about Plaintiff's interactions with staff, including that Plaintiff was rude to nurses and staff during operations and/or unresponsive to nurses after surgery. Compl. ¶¶ 60–65. Plaintiff describes how the Event Reports and complaints were considered by the Credentials Committee responsible for deciding whether to reappoint Plaintiff, and notes that it was mandatory that such complaints be investigated and acted upon. *Id.* ¶¶ 95–96. Following

the decision of the Credentials Committee in September 2019, the same Event Reports and complaints were reviewed by the PAC. *E.g.*, *id.* ¶¶ 102, 125, 144. In addition, Defendants offered a limited reappointment with certain conditions, including attending a course on inter-professional communication and coaching on interacting with staff; Plaintiff rejected this offer, resulting in his contract ending on February 29, 2020. *Id.* ¶¶ 214, 220, 226–27. Accordingly, because he identifies non-discriminatory reasons for his contract not being renewed, Plaintiff fails to plead but-for causation, and his § 1981 discrimination claim must be dismissed. *See Sharifi*, 2021 WL 268808, at *5–6; *Adetoro*, 2020 WL 7122858, at *4–5.

   2.    Claim 2: Plaintiff has not pled facts that can support a cause of action for a hostile work environment under § 1981.

Plaintiff's hostile work environment claim fails because he plausibly alleges neither harassment rising to the level of a hostile work environment nor that the complained-of harassment was based on race. To show a hostile work environment, Plaintiff must allege (i) he belongs to a protected group; (ii) he was subjected to unwelcome harassment; (iii) the harassment complained of was based on race; (iv) the harassment affected a term, condition, or privilege of employment; and (v) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Johnson v. VT Halter Marine, Inc.*, 820 F. App'x 283, 285 (5th Cir. 2020) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)). "To be actionable, the work environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Hernandez*, 670 F.3d at 651. "Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 399 (5th Cir. 2016).

Plaintiff claims Defendants created a hostile work environment by "remain[ing] relentless in [their] unlawful attacks" against him, and that "ever-changing demands that [Defendants] required of him to remain employed" constituted harassment.  Compl. ¶¶ 170, 187.  However, the only conduct of Defendants alleged by Plaintiff consists of investigation into the Event Reports and complaints made about Plaintiff, the PAC process and subsequent recommendations for reappointment, some alleged inconsistency regarding Defendants' policies and to whom Plaintiff should report concerns, and alleged delay in providing the Event Reports and certain policies and decisions to Plaintiff.  *See generally id.* ¶¶ 73–85, 90–93, 102, 109, 111–30; 145–47, 159, 166–68, 170–173.

Plaintiff's own allegations render his hostile work environment claim implausible.  For instance, Plaintiff acknowledges that "[a]ll pediatric surgeons working at [Cook Children's Medical Center] received even[t] reports," and "[a]ll event reports were to be investigated and addressed promptly to ensure the best care for patients."  *Id.* ¶¶ 44, 48.  Accordingly, given that Plaintiff admits that Event Reports must be investigated, the investigation into the Event Reports made about Plaintiff cannot constitute unlawful harassment.  In addition, these allegations do not constitute harassment that affected a term, condition, or privilege of Plaintiff's employment.  For instance, Plaintiff does not allege that his performance as a pediatric surgeon was impaired by the investigations, or that Defendants' conduct was so severe or pervasive as to create an abusive working environment.  Nor does Plaintiff allege that he was physically threatened or humiliated by Defendants' engaging in communications and meetings intended to address Event Reports and complaints made about Plaintiff.  *Contrast Dediol v. Best Chevrolet, Inc*., 655 F.3d 435, 439, 443 (5th Cir. 2011) (allowing hostile work environment claim where plaintiff contended he "endured a pattern of name-calling of a half-dozen times daily" and "[o]n many occasions, there were

incidents of physical intimidation and/or violence" involving the plaintiff's supervisor). Importantly, Plaintiff's allegations regarding his complaints of harassment or a hostile working environment to Defendants are not themselves indicative of frequent workplace harassment. *See West v. City of Hous.*, 960 F.3d 736, 742 (5th Cir. 2020) ("[F]requently complaining about something does not mean it happened frequently."). Put simply, Plaintiff points to no affirmative act *by Defendants* rising to the level of workplace harassment or a hostile work environment, such as racial slurs or physical intimidations. And this is particularly true for the Individual Defendants, with whom Plaintiff alleges he had only minimal contacts—far from a pattern of abuse.

In addition, Plaintiff fails to allege that the complained-of harassment was based on race. Workplace harassment is based on race if "the complained-of conduct had a racial character or purpose." *Adams v. Sw. Airlines*, No. 3:18-cv-3394-G-BN, 2019 WL 1386183, at *5 (N.D. Tex. Mar. 5, 2019). Plaintiff must demonstrate a connection between the allegedly harassing incidents and his protected status. *See id.* (quoting *Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, No. 3:16-cv-1034-D, 2017 WL 274133, at *4 (N.D. Tex. Jan. 20, 2017)).

Here, although Plaintiff makes numerous allegations *attributing* Defendants' condut to some sort of racial stereotyping or animosity, Plaintiff does not identify any conduct of Defendants actually tethered to race. For instance, Plaintiff alleges Defendants used Event Reports and complaints about Plaintiff "to stereotype [him] as an *angry Black person who intimidated and scared staff in the operating room*." Compl. ¶ 69; *see also id.* ¶ 70. However, Plaintiff does not contend that any of the reports or complaints against him reflected racial motivation or hostility. Ten of the reports are described as relating to post-operative orders, and Plaintiff does not allege they were racially motivated. Compl. ¶¶ 61–64. Eight other reports are described as "subjective complaints that [Plaintiff], the lead surgeon in his assigned operations, was intimidating while in

- 14 -

the operating room," without reference to Plaintiff's race or sex. *Id.* ¶ 65. Accordingly, the link between the Event Reports describing Plaintiff as "intimidating" and his allegation that Defendants stereotyped him as an "angry Black man" is completely speculative and lacks *any* factual support to transform Plaintiff's claim from possible to plausible. Similarly, the Complaint includes the statement of a Cook employee that Plaintiff's height could be a valid reason for a nurse to be intimidated, then states *Plaintiff's* belief that the reference to height was "code for being a tall black male surgeon" subject to negative stereotypes. Compl. ¶¶ 153–54.

Put simply, the Complaint contains no allegations where Defendants referenced, mentioned, or considered Plaintiff's race or sex in the investigation and assessment of the Event Reports and complaints. Moreover, Plaintiff does not plausibly allege Defendants' investigation of the reports was racially motivated; on the contrary, Plaintiff acknowledges that Defendants are required to investigate *all* Event Reports. *Id.* ¶ 44.

Absent these implausible efforts by Plaintiff to tie Defendants' conduct to race, Plaintiff's allegations amount to nothing more than claiming he was the only black male pediatric surgeon. *Id*. ¶ 35. Without more, this is insufficient to allege that Defendants' conduct toward him was based on race.

> 3.   Claim 3: Plaintiff cannot allege a claim for retaliation under § 1981 as he asserts no connection between his race/sex and his employment.

Plaintiff's claim for retaliation fails because he does not allege a causal connection between his protected activities and the nonrenewal of his contract. The elements of a § 1981 retaliation claim are (1) the plaintiff engaged in activities protected by § 1981; (2) an adverse employment action followed; and (3) a causal connection between the protected activities and the adverse action. *White Glove Staffing, Inc. v. Methodist Hosps. of Dall.*, 947 F.3d 301, 308 (5th Cir. 2020). Plaintiffs can satisfy the causal connection element by "showing close timing between an

- 15 -

employee's protected activity and an adverse action against him." *Fiest v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013). "Such temporal proximity must generally be 'very close.'" *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)).

Plaintiff alleges that he made a complaint of racial discrimination to Defendants on September 13, 2018. Compl. ¶ 38. The first alleged adverse employment action did not take place until over a year later, on September 19, 2019, when Defendants issued a letter limiting Plaintiff's reappointment to 90 days. *Id.* ¶¶ 88–89. Twelve months between Plaintiff's protected activity and the alleged adverse action against him is too far removed in time to plausibly plead retaliation under § 1981. The Fifth Circuit has found that periods of four months, five months, and eleven months are too remote to support a finding of causal connection. *See, e.g.*, *Ganheart v. Brown*, 740 F. App'x 386, 391 (5th Cir. 2018) (finding a five-month interval between protected activity and adverse action was too long to sustain prima facie case of retaliation); *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 428 n.23 (5th Cir. 2017) (noting an eleven-month interval between protected activity and termination raised "serious temporal-proximity concerns"); *Yancy v. U.S. Airways, Inc.*, 469 F. App'x 339, 345 (5th Cir. 2012) (four-month period between plaintiff's protected activities and suspension was too long to establish a prima facie case of retaliation). Additionally, while temporal proximity alone may establish the causal connection element of a prima facie case, it is insufficient by itself to prove but-for causation. *See Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007).

Nor do Plaintiff's allegations of subsequent, additional acts of retaliation suffice. For instance, Plaintiff alleges he made additional complaints of racial discrimination on September 24, 2019, in November 2019, on December 11, 2019, January 10, 13, and 17, 2020, and February 5, 2020. *Id.* ¶¶ 93, 160, 168, 187, 209, 226. However, these further complaints were all made after

Defendants had already decided to limit Plaintiff's reappointment to 90 days, and "no causal link exists when the decision to terminate an employee was made prior to the employee's protected activity." *Hebert v. Unum Grp.*, No. 4:18-CV-00910, 2020 WL 7074706, at *25 (E.D. Tex. Sept. 11, 2020) (citing *David v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 494 (5th Cir. 2011) (finding no causation for retaliation existed where decision not to renew the plaintiff's contract was made before the plaintiff filed a grievance); *Foster v. Solvay Pharms., Inc.*, 160 F. App'x 385, 389 (5th Cir. 2005)). Moreover, it was not retaliatory to continue investigating the Event Reports given the PAC review process was already in progress when Plaintiff made these subsequent complaints. As the Fifth Circuit has recognized, "a Title VII claimant cannot, with each protected activity, re-start 'the temporal-proximity clock.'" *Alkhawaldeh*, 851 F.3d at 428 n.23 (quoting *Hanks v. Shinseki*, No. 3:08-1594-G, 2010 WL 3000835, at *7 (N.D. Tex. July 28, 2010)).

      **C.**     **Plaintiff does not state a claim under Title VII of the Civil Rights Act of 1964 (Claims 4–7)**

           1.    Claim 4: Plaintiff fails to state a cognizable claim for race discrimination under Title VII against Cook Children's.

Plaintiff's failure to allege the existence of any similarly situated comparators who were treated more leniently for similar misconduct is just as fatal to his Title VII claim as it is for his § 1981 claim. *See supra* Section III(B)(1). Plaintiff must "allege enough facts to plausibly establish that [his] employer discriminated against [him] due to [his] race." *Gallentine v. Hous. Auth.*, 919 F. Supp. 2d 787, 804 (E.D. Tex. 2013). Specifically, to state a claim for disparate treatment, Plaintiff must plausibly allege (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) ***others outside the class who were similarly situated were treated more favorably than he***. *Carter v. Burlington N. Santa Fe LLC*, No. 4:15-cv-366-O, 2015 WL 11022766, at *4 (N.D. Tex. Oct. 9, 2015)

(O'Connor, J.) (citing *Puente v. Ridge*, 324 F. App'x 423, 428 (5th Cir. 2009); *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007)).

     As discussed above, Plaintiff does not allege even in general terms that *any* of the other pediatric surgeons were the subject of *any* complaints about their demeanor or behavior toward staff, or any similar issues involving their interpersonal interactions. *Cf. Brown*, 871 F. Supp. 2d at 593–94 (different treatment of similarly situated comparators can be circumstantial evidence of discriminatory intent). Even assuming that Plaintiff is not required at the pleading stage to make the showing of "nearly identical" misconduct required at summary judgment, *see id.* at 593, he is still required to plead some facts plausibly alleging that similarly situated comparators who engaged in similar misconduct were treated differently. *See, e.g.*, *Gallentine*, 919 F. Supp. 2d at 792 (plaintiff escaped dismissal in alleging, among other things, that she was reprimanded for wearing jeans at work while similarly situated non-African American employee often wore jeans and was not reprimanded); *Brown*, 871 F. Supp. 2d at 593 (plaintiff's allegation that four white employees had similar or worse criminal records and were not discharged was sufficient to survive motion to dismiss). But Plaintiff alleges no such facts. Without any evidence that similar conduct by similarly situated comparators was treated differently, Plaintiff can point to no facts supporting his bare, conclusory allegation that Cook Children's handling of the complaints against him was motivated by race. Thus, even under Title VII's more lenient "mixed-motive" causation standard, Plaintiff's claim fails because he does not offer any plausible facts suggesting any racial motivation on Cook's part. *See, e.g.*, *Corrica v. Am. Airlines*, No. 3:20-CV-0679-B, 2020 WL 7711830, at *4 (N.D. Tex. Dec. 28, 2020) (Title VII and § 1981 race discrimination claims failed because plaintiff did not identify any similarly situated employee treated more favorably or allege any facts suggesting employer's treatment of her was racially motivated). Plaintiff's allegations of racially

motivated discrimination are too conclusory to "raise his right to relief above the speculative level." *See id.* (quoting *Twombly*, 550 U.S. at 555).

In addition, Plaintiff's race discrimination claim under Title VII is partly foreclosed by the statute of limitations. A Title VII plaintiff must file a charge with the EEOC within 300 days of the alleged discriminatory conduct. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–10 (2002). Here, because Plaintiff filed his EEOC charge on May 19, 2020, Compl. ¶ 3, he is barred by the statute of limitations from suing upon any purported discriminatory conduct that took place before July 24, 2019. This means that whatever may have prompted Plaintiff to make his initial complaint about racial discrimination on September 13, 2018, Compl. ¶¶ 38–39, the subject of that complaint is no longer actionable.

2.  Claim 5: Plaintiff's claim for race plus sex discrimination under Title VII against Cook Children's fails due to his failure to allege disparate treatment.

Plaintiff's failure to identify a similarly situated comparator is as fatal to his sex discrimination claim as it is to his race discrimination claim. Plaintiff does not even allege the existence of any similarly situated women among the pediatric surgeons at Cook Children's, let alone suggest any such women engaged in conduct similar to what he was accused of. Thus, he has no plausible facts to support his bare assertion that he was discriminated against because he is male.

3.  Claim 6: Plaintiff has not presented a valid claim for a hostile work environment under Title VII against Cook Children's.

Plaintiff's hostile environment claim fails under Title VII for the same reason it fails under § 1981. *See supra* Section III(B)(2). He does not come close to alleging any facts suggesting he was subjected to a level of harassment that was so "severe and pervasive" as to "alter the conditions" of his employment and create a "hostile working environment," or that was so

objectively offensive that a reasonable person would find it hostile and abusive." *Brooks*, 640 F. App'x at 399; *Hernandez*, 670 F.3d at 671.

4.     Claim 7: Plaintiff cannot support a claim for retaliation under Title VII against Cook Children's.

Plaintiff's retaliation claim fails under Title VII for the same reasons it fails under § 1981. *See supra* Section III(B)(3). The nearly 11-month gap between Plaintiff's September 2018 discrimination complaint and the first indication in August 2019 that Cook Children's was reviewing Plaintiff's Event Reports is simply too long a time span to plausibly allege that the latter was retaliation for the former. And there are no facts beyond conclusory assertions to suggest that the additional discrimination complaints Plaintiff made between September 2019 and February 2020 (Compl. ¶¶ 93, 160, 168, 187, 209, 226) were the cause of any unlawful retaliation, because Cook Children's actions during that period were merely the continuation of the review process it had begun in August 2019. And, once again, the lack of any allegations regarding disparate treatment of similarly situated comparators means that Plaintiff has failed to plead any factual basis for his bare conclusory assertion that Cook's treatment of him was in any way motivated by his alleged complaints of discrimination.

**D.     Plaintiff does not state a claim for disability discrimination or retaliation under the ADA (Claims 8–9).**

1.     Claim 8: Plaintiff has not plausibly pled a claim for disability discrimination under the ADA against Cook Children's.

Plaintiff's disability discrimination claim must be dismissed because he does not plausibly allege that he was or was regarded as disabled under the ADA and does not allege any adverse employment decision resulted from Cook Children's regarding him as disabled. A prima facie case requires Plaintiff to establish: (1) he had or was regarded as having a disability; (2) he was qualified

for the job; and (3) the employer's adverse employment decision was a result of his disability. *Diggs v. Burlington N. & Santa Fe Ry. Co.*, 742 F. App'x 1, 3 (5th Cir. 2018) (per curiam).

Plaintiff alleges the PAC was assigned to review Event Reports and complaints submitted about Plaintiff, and the PAC bylaws state, in part, that it is responsible for receiving, investigating, and acting on reports of "possible impairment of a Practitioner." Compl. ¶¶ 102–07. Plaintiff further alleges that the PAC should not have been charged with reviewing the reports about Plaintiff because "not one of those reports or complaints referenced [Plaintiff] having a suspected or mental health impairment." *Id.* ¶ 108. Plaintiff appears to allege that Cook Children's regarded Plaintiff as impaired solely by virtue of the fact that the entity charged with investigating the Event Reports and complaints filed about him—the PAC—also investigates reports of possible impairment according to its bylaws. Thus, Plaintiff claims Cook Children's "wrongly regarded [him] a[s] 'impaired.'" *Id.* ¶ 223.

As an initial matter, conclusory allegations that Cook Children's regarded him as having a mental impairment are insufficient to allege he was regarded as disabled at 12(b)(6). *See Stewart v. AutoRevo, Ltd.*, No. 3:17-CV-0019-B, 2017 WL 5177119, at *4 (N.D. Tex. Nov. 8, 2017) (dismissing disability discrimination claims because plaintiff's bare allegation defendant regarded him as being physically impaired was "insufficient to establish he was regarded as disabled"). Moreover, Plaintiff's "regarded-as disabled" allegation based on the PAC's bylaws is not plausible; regardless of what the PAC's bylaws say, Plaintiff's own allegations concede there was no basis in the Event Reports or complaints to conclude Plaintiff had a suspected mental health impairment, and Plaintiff does not otherwise allege—plausibly or otherwise—that Cook Children's considered him mentally impaired. Indeed, contrary to Plaintiff's conclusory assertion that Cook considered him substantially limited in his ability to work due to disability, Plaintiff's

allegations indicate that Cook Children's considered his performance as a surgeon "beyond satisfactory," and that he performed all essential functions required of his role. Compl. ¶¶ 94, 224, 292. Moreover, allegations in the Complaint indicate the Event Reports being investigated by the PAC related to Plaintiff's behavior and demeanor rather than to any possible mental impairment. *E.g.*, *id.* ¶ 65 (alleging that eight Event Reports contained complaints Plaintiff "was intimidating while in the operating room"); *see also id.* ¶¶ 73, 85, 93, 122, 131, 158, 179, 181–82, 220.

Plaintiff's disability discrimination claim further fails because he makes only conclusory allegations connecting the nonrenewal of his contract with being regarded as disabled. *See id.* ¶ 293. Even taking as true Plaintiff's allegation that Cook Children's regarded him as disabled, throughout the Complaint, Plaintiff alleges discrimination and retaliation on the basis of race (and occasionally gender), but not disability. *See id.* ¶¶ 38–39, 93, 226. Moreover, Plaintiff alleges that when he rejected Cook Children's invitation to extend Plaintiff's reappointment conditionally—leading to Plaintiff's contract ending, the alleged adverse event—Plaintiff blamed "ongoing racial and gender discrimination and retaliation," but not discrimination on the basis of disability. *Id.* ¶ 226. Put simply, the Complaint contains no allegations plausibly connecting any alleged discrimination with Plaintiff's allegation that Cook Children's regarded him as disabled.

Accordingly, because Plaintiff fails to plausibly allege either that Cook Children's regarded him as disabled or that any alleged disability resulted in his termination, his ADA discrimination claim fails.

2.    Claim 9: Plaintiff has not properly pled a claim for retaliation under the ADA against Cook Children's.

Plaintiff's claim for retaliation under the ADA fails because he does not plead facts showing he made any complaint about disability discrimination that could have prompted any retaliation. Plaintiff alleges neither that he engaged in a protected activity under the ADA nor that

- 22 -

there was a causal link between the protected activity and his employment contract ending, the alleged adverse employment action.  To establish a prima facie case of retaliation under the ADA, Plaintiff must show (i) he engaged in protected activity, (ii) an adverse employment action occurred, and (iii) a causal link exists between the protected activity and the adverse employment action.  *Besser v. Tex. Gen. Land Office*, __ F. App'x ___, 2020 WL 6476707, at *7 (5th Cir. Nov. 3, 2020).  Protected activity includes "opposing any act or practice made unlawful by the ADA," and Plaintiff must allege he had a "reasonable belief that the employer was engaged in unlawful employment practices" under the ADA.  *Id.*

The Complaint lacks any plausible allegations that Plaintiff engaged in a protected activity under the ADA.  The only allegations of retaliation under the ADA in the Complaint are conclusory assertions that Plaintiff "engaged in protected activity by submitting an internal complaints [sic] of disability discrimination to defendants," and that each time a complaint was submitted, "Defendants escalated their retaliation against Plaintiff."  Compl. ¶¶ 297–98.  But unlike Plaintiff's allegations of his complaints about race discrimination—for which he identifies the date of the complaint and the recipient—the Complaint lacks any facts from which one can plausibly infer that Plaintiff submitted internal complaints about discrimination under the ADA so as to have engaged in a protected activity.  For instance, Plaintiff does not identify the alleged wrongdoing complained of in the internal complaints; given that he elsewhere claims that Cook Children's "wrongly" regarded him as impaired, it is unclear whether these alleged internal complaints of disability discrimination concerned Plaintiff (who, by his own admission, is not impaired), Plaintiff being "regarded as" disabled, or someone else.  *See id*. ¶ 223.  More importantly, Plaintiff never alleges that he had a reasonable belief that Cook Children's engaged in unlawful employment practices, which is required to plead he engaged in a protected activity under the ADA.

In addition, not only does Plaintiff fail to plausibly allege that he engaged in a protected activity under the ADA, he does not identify a causal link between the protected activity and his termination. Accordingly, Plaintiff fails to state a claim for relief for retaliation under the ADA.

**E.** **Plaintiff fails to state a claim for relief under Chapter 21 of the Texas Labor Code (Claims 10–15).**

      1. <u>Claim 10–14: Plaintiff's claims of race discrimination, sex discrimination, hostile environment, and retaliation claims under Chapter 21 of the Texas Labor Code against Cook Children's similarly fail.</u>

Plaintiff's claims for race discrimination, sex discrimination, hostile work environment, and retaliation under Chapter 21 of the Texas Labor Code are reviewed under standards identical to his federal claims under Title VII. *See* TEX. LAB. CODE § 21.001(1) (stating one of the "general purposes of this chapter" is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964"); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001) (same). Thus, "analogous federal statutes and the cases interpreting them guide" the reading of the Texas statute. *Quantum*, 47 S.W.3d at 476. Accordingly, Plaintiff's claims under the Texas Labor Code fail for all the same reasons as do his claims under Title VII. *See supra* Section III(C).

      2. <u>Claim 15: Plaintiff's claim of disability discrimination under Chapter 21 of the Texas Labor Code against Cook Children's fails due to Plaintiff's lack of a disability.</u>

Plaintiff's claim for disability discrimination under Chapter 21 of the Texas Labor Code should be dismissed for the same reasons as Plaintiff's claim for disability discrimination under the ADA—*i.e.*, Plaintiff does not allege that he was or was regarded as disabled, and does not allege any adverse employment decision resulted from Cook Children's regarding him as disabled. "Because TCHRA parallels the language of the ADA, Texas courts follow ADA law in evaluating

- 24 -

TCHRA discrimination claims."[6] *Clark v. Champion Nat'l Security, Inc.*, 952 F.3d 570, 578 n.16 (5th Cir. 2020).   The analysis of Plaintiff's disability discrimination claim under the ADA (Claim 8) therefore applies equally to this claim for disability discrimination under the Texas Labor Code, and is incorporated herein by reference. *See id.*

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6), and dismiss Plaintiff's Original Complaint and Jury Demand without leave to amend.

---

[6]    Plaintiff's disability discrimination claims under the Texas Labor Code are based on the Texas Commission on Human Rights Act (TCHRA).

Date: <u>February 19, 2021</u>                    Respectfully submitted,

                                           <u>*/s/ Geoffrey S. Harper*</u>

                                           Steven H. Stodghill
TX Bar No. 19261100
sstodghill@winston.com
Geoffrey S. Harper
TX Bar No. 00795408
gharper@winston.com
Claire E. Dial
TX Bar No. 24116283
cdial@winston.com
*Application for Admission to N.D. Tex.*
*Pending*

**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
T: 1-214-453-6500
Facsimile: 1-214-453-6400

Cardelle B. Spangler
IL Bar No. 6242570
CSpangler@winston.com
*Pro Hac Vice Application to Be Filed*

**WINSTON & STRAWN LLP**
35 West Wacker Drive, Suite 40
Chicago, IL 60601
T: 1-312-558-5600
F: 1-312-558-5700

***ATTORNEYS FOR DEFENDANTS***

<u>**CERTIFICATE OF SERVICE**</u>

      The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's EM/ECF system on February 19, 2021.

                                           <u>*/s/ Geoffrey S. Harper*</u>
                                           Geoffrey S. Harper