## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| PATRICK THOMAS, <br><br>               Plaintiff <br><br> v. <br><br> COOK CHILDREN'S HEALTH CARE SYSTEM, et al,, <br><br>               Defendants | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> §       Civil Action 4:20-cv-1272 |

## DEFENDANTS' MOTION FOR AWARD OF DEFENSE EXPENSES AND ATTORNEYS' FEES

Steven H. Stodghill
Tex. Bar No. 19261100
sstodghill@winston.com
Geoffrey S. Harper
Tex. Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Tex. Bar No. 24069747
mgaddis@winston.com
Claire E. Dial
Tex. Bar No. 24116283
cdial@winston.com

**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: 1-214-453-6500
Telefax: 1-214-453-6400

Cardelle B. Spangler
Ill. Bar No. 6242570
cspangler@winston.com
*Admitted Pro Hac Vice*

**WINSTON & STRAWN LLP**
35 West Wacker Drive, Suite 40
Chicago, IL 60601
Telephone: 1-312-558-5600
Telefax: 1-312-558-5700

*ATTORNEYS FOR DEFENDANTS*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 6

ARGUMENT AND AUTHORITIES ............................................................................... 7

I.     Applicable Legal Standards for Recovery of Attorneys' Fees and Expenditures. ............ 7

      A.    Standard for Recovery Under 42 U.S.C. § 11113 ...................................................... 7

      B.    Standard for Recovery Under 42 U.S.C. §§ 1988, 2000e-f(k) and Texas Labor Code § 21.259 .................................................................................................................. 9

      C.    Standard for Providing Proof of Fees. .................................................................... 11

II.    Defendants Qualify for an Award of Expenses and Fees Under the Relevant Statutes. .. 11

      A.    Defendants Satisfied the Standards Under Section 11112(a) ................................. 11

      B.    Defendants Can Recover Fees Under the Remaining Statutes as They Substantially Prevailed in this Matter. ........................................................................................ 15

III.   Defendants are Entitled to Recover Fees as Many of Plaintiff's Claims and Actions Taken During this Suit were Frivolous and Unreasonable. .............................................. 15

IV.   An Award of $1 Million in Fees and Expenses is Reasonable and Appropriate for Defending Against Plaintiff's Bad Faith Claims and Tactics ........................................... 22

CONCLUSION .............................................................................................................. 23

## INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Benson v. St. Joseph Regional Health Center,*
  Case No. H-04-4323, 2007 WL 7120757 (S.D. Tex. Mar. 22, 2007) ....................................15

*Bos. Pizza Restaurants, L.P. v. Bay Three Ltd., Inc.,*
  No. 3:12-CV-00426-O, 2013 WL 12123896 (N.D. Tex. July 16, 2013)................................23

*Bryan v. James E. Holmes Reg'l Med. Ctr.,*
  33 F.3d 1318 (11th Cir. 1994) ...............................................................................................15

*Choice Hotels Int'l, Inc. v. Cheema Invs.,*
  LLC, No. 3:11-CV-01762-O, 2013 WL 12125998 (N.D. Tex. Feb. 20, 2013)......................23

*Christiansburg Garment Co. v. EEOC,*
  434 U.S. 412 (1978)...............................................................................................................11

*Cohlmia v. St. John Med. Ctr.,*
  749 F.3d 1175 (10th Cir. 2014) ..........................................................................................9, 10

*CRST Van Expedited, Inc. v. E.E.O.C.,*
  578 U.S. 419 (2016)...............................................................................................................11

*E.E.O.C. v. Agro Distribution, LLC,*
  555 F.3d 462 (5th Cir. 2009) ...........................................................................................10, 11

*Eagle Oil & Gas Co. v. Travelers Prop. Cas. Co. of Am.,*
  No. 7:12-CV-00133-O, 2015 WL 12696493 (N.D. Tex. Jan. 22, 2015)...............................12

*Elgaghil v. Tarrant Cnty. Jr. Coll.,*
  45 S.W.3d 133 (Tex. App.—Fort Worth 2000, pet. denied) ..................................................11

*Emlich v. OhioHealth Corp.,*
  Case No. 2:14-cv-1697, 2016 WL 7406536 (S.D. Ohio Dec. 22, 2016)................................14

*Everhart v. Jefferson Parish Hosp. Dist. No. 2,*
  757 F.2d 1567 (5th Cir. 1985) ...............................................................................................14

*Fox v. Vice,*
  563 U.S. 826 (2011)................................................................................................................11

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983)................................................................................................................12

*Jenkins v. Methodist Hospitals of Dallas, Inc.*,
    Case No. 3:02 CV 1823-M, 2004 WL 3393380 (N.D. Tex. Aug. 14, 2004)..........................13

*Johnson v. Equifax Info. Servs., LLC*,
    No. 4:16-CV-00551, 2017 WL 1037588 (E.D. Tex. Mar. 17, 2017) .......................................8

*Johnson v. Spohn*,
    334 F. App'x 673 (5th Cir. 2009) .........................................................................................14

*Long v. H & P Cap., Inc.*,
    No. 3:11-CV-00547, 2013 WL 3809672 (N.D. Tex. July 23, 2013).....................................23

*Meyers v. Columbia/HCA Healthcare Corp.*,
    341 F.3d 461 (6th Cir. 2003) ................................................................................................14

*Moore v. Williamsburg Regional Hospital*,
    Case No. 4:05-2940-TLW, 2008 WL 11429591 (D. S.C. Sept. 23, 2008)............................16

*Mylett v. Jeane*,
    910 F.2d 296 (5th Cir. 1990) ................................................................................................11

*No Barriers, Inc. v. Brinker Chili's Texas, Inc.*,
    262 F.3d 496 (5th Cir. 2001) ................................................................................................11

*Obey v. Frisco Medical Center, L.L.P.*,
    Case No. 4:13-CV-656, 2015 WL 417425 (E.D. Tex. Jan. 30, 2015)...................................13

*Playoff Corp. v. Blackwell*,
    300 S.W.3d 451 (Tex. App.—Fort Worth 2009, pet. denied) ...............................................10

*Poliner v. Texas Health Systems*,
    537 F.3d 368 (5th Cir. 2008) ...........................................................................................15, 16

*Reed v. Franklin Parish Hosp. Service Dist.*,
    Case No. 04-1481, 2006 WL 3589676 (W.D. La. Dec. 11, 2006) .........................................14

*Rooney v. Med. Ctr. Hosp. of Chillicothe*,
    No. C2-91-1100, 1995 WL 437548 (S.D. Ohio Mar. 8, 1995)..................................10, 16, 17

*SAP America, Inc. v. Investpic, LLC*,
    No. 3:16-CV-02689-K, 2018 WL 6329690 (N.D. Tex. Dec. 4, 2018)...................................24

*Smith v. Ricks*,
    31 F.3d 1478 (9th Cir. 1994) ................................................................................................10

*Stelly v. C.I.R.*,
    804 F.2d 868 (5th Cir. 1986) ................................................................................................11

*United Indus., Inc. v. Simon-Hartley, Ltd.*,
    91 F.3d 762 (5th Cir. 1996) ...................................................................................8

*Veach v. State Farm Lloyds*,
    No. 3:19-cv-02312-BT, 2021 WL 5920903 (N.D. Tex. Dec. 15, 2021) .................................24

*Wegner v. Standard Ins. Co.*,
    129 F.3d 814 (5th Cir. 1997) ...............................................................................12

**Statutes**

42 U.S.C. § 1988 ...............................................................................................10

42 U.S.C. § 2000e-f(k) .........................................................................................10

42 U.S.C. § 11111(a) ...........................................................................................9

42 U.S.C. § 11111(a)(1) ........................................................................................12

42 U.S.C. § 11112(a) ...............................................................................10, 12, 13, 16

42 U.S.C. § 11112(a)(1) ....................................................................................13, 15

42 U.S.C. § 11112(a)(2) ........................................................................................14

42 U.S.C. § 11112(a)(3) ........................................................................................15

42 U.S.C. § 11112(a)(4) ........................................................................................15

42 U.S.C. § 11113 ..........................................................................................*passim*

42 U.S.C. § 11151(4)(A) ........................................................................................13

42 U.S.C. § 11151(9) ...........................................................................................13

Texas Labor Code § 21.259 ..................................................................................8, 10

Texas Labor Code Chapter 21 .................................................................................11

**Other Authorities**

Fed. R. Civ. P. 54(c)(2) ........................................................................................7

Fed. R. Civ. P. 54(d)(2)(A) .....................................................................................8

> *"Plaintiffs' claims in this action are merely a continuation of Plaintiff['s] abusive, harassing and intimidating behaviors toward his colleagues, co-workers and patients. This is precisely the sort of abusive misuse of the Court which Congress intended to curb by the [Health Care Quality Improvement Act of 1986]."*
>
> - *Rooney v. Med. Ctr. Hosp. of Chillicothe*, No. C2-91-1100, 1995 WL 437548, at *3 (S.D. Ohio Mar. 8, 1995)

Pursuant to FED. R. CIV. P. 54(c)(2), Defendants Cook Children's Health Care System, Cook Children's Physician Network, Cook Children's Medical Center, Rick Merrill, Nancy Cychol, W. Britt Nelson, Larry Reaves, and Donald Beam move the Court for an award of a portion of their defense costs and attorneys' fees and, in support thereof, short the Court as follows:

## **INTRODUCTION**

Plaintiff and his counsel have doggedly pursued this litigation, asserting baseless factual claims and causes of action while continuously engaging in litigation conduct designed solely to obstruct the Defendants and raise the cost of the litigation.

After Plaintiff resigned from his employment at Cook Children's Physician Network because he refused to agree to take any actions designed to improve his abusive behavior towards the non-physician medical staff, he filed suit against Defendants with an Original Complaint so devoid of accuracy that most of the facts alleged therein were totally abandoned long before summary judgment was briefed. While the Court dismissed several of his causes of action early, it was unable to evaluate most of them on the merits because, at the Motion to Dismiss stage, the Court was required to assume that the facts alleged in the Complaint were accurate (a position that not even Plaintiff alleges today).  And having survived the Motion to Dismiss allowed the Plaintiff to focus his efforts on making the litigation as difficult and expensive for Defendants as possible. In an effort to harass the Defendants and to exert maximum pressure to support his extortive

monetary demands, Plaintiff filed suit against the senior most executives of the Cook Children's system – despite their total lack of connection to the claims – and constantly shifted the factual basis for his claims while simultaneously abusing the discovery process.  For these reasons, Defendants ask the Court to award them $1,000,000.00 in defense expenditures and attorneys' fees.  As discussed in detail below, this number represents a reasonable and necessary fee for Plaintiff's actions and is but a fraction of the actual costs incurred do to Plaintiff's baseless claims and abusive litigation tactics.  (This Motion does not seek "costs," which are being separately presented to the clerk pursuant to the procedures adopted by the Northern District of Texas.)

## ARGUMENT AND AUTHORITIES

## I.  Applicable Legal Standards for Recovery of Attorneys' Fees and Expenditures.

Defendants move[1] for attorneys' fees under four different statutes: 42 U.S.C. §§ 11113 (professional review actions), 1988 (§ 1981 claims), 2000e-f(k) (Title VII claims), and TEX. LABOR CODE § 21.259 (Texas Labor Code claims).   The provision in 42 U.S.C. § 11113 applies when a hospital has conducted a qualifying professional review action.  The remaining statutes apply when a defendant substantially prevails in an employment-discrimination case. Each presents a standard for the recovery of fees as follows:

### A.  Standard for Recovery Under 42 U.S.C. § 11113

Under 42 U.S.C. § 11113, a hospital that has conducted a sufficient professional review action may, in "any suit," recover "a reasonable attorney's fee, if the claim, or the claimant's conduct during the litigation of the claim, was frivolous, unreasonable, without foundation, or in

---

[1]      Because the "right to attorneys' fees is a defensive matter for frivolous claims," a request for attorneys' fees is properly presented by motion. *Johnson v. Equifax Info. Servs., LLC*, No. 4:16-CV-00551, 2017 WL 1037588, at *1 (E.D. Tex. Mar. 17, 2017); *accord* FED. R. CIV. P. 54(d)(2)(A); *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 766 (5th Cir. 1996).  Defendants do "not need to plead attorneys' fees as a counterclaim" because there is no separate cause of action for fees. *Johnson*, 2017 WL 1037588, at *1. Indeed, asserting a "counterclaim for attorneys' fees is improper." *Id.*

bad faith." 42 U.S.C. § 11113 (citing *id.* at § 11112(a)). The "professional review action must be taken—

    (1)    in the reasonable belief that the action was in the furtherance of quality health care,

    (2)    after a reasonable effort to obtain the facts of the matter,

    (3)    after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

    (4)    in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3)."

*Id.* at § 11112(a).

    The reviewing court presumes that a professional review action meets these standards "unless the presumption is rebutted by a preponderance of the evidence. *Id.* Further, the fee-shifting provision in § 11113 that relies on these standards applies to "any suit," even if the immunity also associated with these standards does not apply. *Id.* at § 11113; *Cohlmia v. St. John Med. Ctr.*, 749 F.3d 1175, 1178–79 (10th Cir. 2014) ("The text of the statute does not suggest that 'claim' could have an alternative meaning in this context, let alone that 'claim' refers only to a contest of HCQIA immunity. In fact, the fee-shifting provision makes no mention of immunity at all."). That is to say, even if defendants could not avail themselves of immunity from a plaintiff's civil rights claims based on their professional review of his conduct, *see* 42 U.S.C. § 11111(a), such defendants are nevertheless entitled to attorneys' fees based on that same professional review, *id.* at § 11113; *Cohlmia*, 749 F.3d at 1178–79.

Once a plaintiff fails to rebut the presumption that a defendants' professional review satisfied § 11112(a), the question is simply whether the plaintiff's claims or conduct were "frivolous, unreasonable, without foundation, or in bad faith." 42 U.S.C. § 11113. Conduct can be unreasonable in a variety of situations. It is unreasonable to continue to pursue a claim even after the plaintiff discovers that the claim is meritless. *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 472–73 (5th Cir. 2009); *Cohlmia*, 749 F.3d at 1179. It is unreasonable to harass a defendant using discovery. *See Rooney v. Med. Ctr. Hosp. of Chillicothe*, No. C2-91-1100, 1995 WL 437548, at *3 (S.D. Ohio Mar. 8, 1995) ("The Court concludes that Plaintiffs' claims in this action are merely a continuation of Plaintiff['s] abusive, harassing and intimidating behaviors toward his colleagues, co-workers and patients."). And it is unreasonable to burden the opposing party with vexatious and duplicative filings. *Smith v. Ricks*, 31 F.3d 1478, 1484–85 (9th Cir. 1994) ("The court relied on Berg's 'pattern of misconduct' including making unreasonable discovery requests, filing unauthorized pleadings, filing an improper motion to reconsider/correct summary judgment, and filing the renoticed motion without reading it.").

**B.    Standard for Recovery Under 42 U.S.C. §§ 1988, 2000e-f(k) and Texas Labor Code § 21.259.**

The remaining three fee-shifting provisions authorize the award of attorneys' fees to a substantially prevailing defendant in an employment discrimination case. *See* 42 U.S.C. § 1988; *id*. at 2000e-f(k); Tex. Labor Code § 21.259. Under these statutes, a defendant is entitled to attorneys' fees when the plaintiff's claims are "frivolous, meritless, or unreasonable, or the plaintiff continued to litigate after it became clear that the claim was frivolous." *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 459 (Tex. App.—Fort Worth 2009, pet. denied) (following federal

antidiscrimination precedents in assessing whether a prevailing defendant can recover attorneys' fees under Chapter 21 of the Texas Labor Code).[2]

A claim is frivolous if it has "no basis in law or fact." *Stelly v. C.I.R.*, 804 F.2d 868, 870 (5th Cir. 1986). In the context of employment-discrimination claims, the Fifth Circuit has determined that a claim is frivolous when, *inter alia*, the plaintiff's own admission defeats a key element of the claim and when the plaintiff sues the wrong party. *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 472 (5th Cir. 2009); *No Barriers, Inc. v. Brinker Chili's Texas, Inc.*, 262 F.3d 496, 498 (5th Cir. 2001); *see also* Dkt. 134 at 20 ("[E]ven Thomas admits that providing reports to the Credentials Committee does not place a person in a supervisory role."); Dkt. 1 (naming Rick Merrill and Nancy Cychol as defendants).

Importantly, in assessing whether a defendant substantially prevailed, courts assess each claim individually to determine whether the defendant is entitled to attorneys' fees on that claim. *Fox v. Vice*, 563 U.S. 826, 835–36 (2011); *see also CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 429–30 (2016) (relying on *Fox* to address prevailing party status of a defendant to an employment-discrimination claim); *see also Elgaghil v. Tarrant Cnty. Jr. Coll.*, 45 S.W.3d 133, 145 (Tex. App.—Fort Worth 2000, pet. denied) (stating that Texas courts should refer to federal law to help interpret Chapter 21 of the Texas Labor Code). Accordingly, if some of a plaintiff's claims are frivolous, the defendants can recover "the portion of [their] fees that [they] would not have paid but for the frivolous claim[s]." *See Fox*, 563 at 835–36.

---

[2]     *Accord E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 472 (5th Cir. 2009) (stating that Title VII permits attorneys' fees to a prevailing defendant only when the plaintiff's action was "frivolous, unreasonable, or groundless, or [when] the plaintiff continued to litigate after it clearly became so" (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978))); *Mylett v. Jeane*, 910 F.2d 296, 299 (5th Cir. 1990) ("[W]e have permitted attorney's fees to prevailing defendants under section 1988 only upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation or that the plaintiff continued to litigate after it clearly became so."); *No Barriers, Inc. v. Brinker Chili's Texas, Inc.*, 262 F.3d 496, 498 (5th Cir. 2001) (holding that, under the ADA, "a prevailing defendant may not receive fees 'unless a court finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so'" (quoting *Christiansburg*, 434 U.S. at 421)).

### C.       Standard for Providing Proof of Fees.

Regardless of the basis for the award, the Defendants "bear[] the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorneys' qualification and skill." *Eagle Oil & Gas Co. v. Travelers Prop. Cas. Co. of Am.*, No. 7:12-CV-00133-O, 2015 WL 12696493, at *3 (N.D. Tex. Jan. 22, 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997)).  This documentation allows the court to arrive at the proper fee award using the lodestar method.  To the extent that the opposing party "seek[s] reduction of the lodestar[, that party] bears the burden of showing that a reduction is warranted."  *Id.*

## II.     Defendants Qualify for an Award of Expenses and Fees Under the Relevant Statutes.

As discussed in Section III, *infra*, many of Plaintiff's claims and actions during this litigation were frivolous and unreasonable.  Thus, Defendants can recover fees and expenses under 42 U.S.C. § 11113 for a valid peer review proceeding.  Moreover, to the extent that Defendants' fees are not covered by 42 U.S.C. § 11113, Defendants qualify for an award of attorneys' fees under the remaining employment-discrimination statutes as the prevailing party.

### A.       Defendants Satisfied the Standards Under Section 11112(a)

As an initial matter, Defendants clearly satisfied the standards set forth under Section 11112(a). *First*, all of the Defendants in this case fall within the scope of Section 11112 as either a "professional review body" or a person "acting as a member or staff of the body." *See* 42 U.S.C. § 11111(a)(1) ("If a professional review action . . . of a professional review body meets all the standards specified in section 11112(a) of this title, . . . (A) the professional review body, (B) any person acting as a member or staff to the body, (C) any person under a contract or other formal agreement with the body, and (D) any person who participates with or assists the body with respect to the action, shall not be liable in damages . . ."). As "professional review bodies" include hospitals

and entities that provide "health care services and that follow[] a formal peer review process for the purpose of furthering quality health care," each of the Cook Children's entities are covered under this statute. 42 U.S.C. § 11151(4)(A). Each of the Individual Defendants were employed by Cook Children's during the relevant time period, and thus are also within the scope of § 11112(a).

*Second*, Defendants' actions plainly constituted a "professional review action." 42 U.S.C. § 11112(a). A "professional review action" is defined as "an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges . . . of the physician. Such term includes a formal decision of a professional review body not to take an action . . . and also includes professional review activities relating to a professional review action." 42 U.S.C. § 11151(9). Under the facts of this case, it is undisputed that the review of the complaints against Dr. Thomas done by the Peer Assistance Committee and Joint Credentials Committee is a "professional review action." *See Obey v. Frisco Medical Center, L.L.P.*, Case No. 4:13-CV-656, 2015 WL 417425, at *7 (E.D. Tex. Jan. 30, 2015) ("Under the facts of this case, it is undisputed that a professional review action was taken against Plaintiff when Defendants investigated the complaints made against Plaintiff and recommended a psychiatric evaluation.").

*Third*, Defendants took the professional review action "in the reasonable belief that the action was in furtherance of quality health care." 42 U.S.C. § 11112(a)(1). Courts in this district have ruled that this prong is satisfied if the peer review body, "with the information available to them at the time of the professional review action, would reasonably have concluded that their action would restrict incompetent behavior or would protect patients." *Jenkins v. Methodist*

*Hospitals of Dallas, Inc.*, Case No. 3:02 CV 1823-M, 2004 WL 3393380, at *17 (N.D. Tex. Aug. 14, 2004). "Quality health care" refers to not only limiting "clinical incompetence" but also "includes matters of general behavior and ethical conduct." *Meyers v. Columbia/HCA Healthcare Corp.*, 341 F.3d 461, 469 (6th Cir. 2003); *see Everhart v. Jefferson Parish Hosp. Dist. No. 2*, 757 F.2d 1567, 1573 (5th Cir. 1985) ("Quality patient care demands that doctors possess at least a reasonable ability to work with others."). Here, the summary judgment record already establishes that Defendants reasonably concluded that the review and any recommendations made by the Peer Assistance Committee would address Dr. Thomas's behavior. *See* Dkt. 134 at 7 ("[E]ven after excluding reports that do not raise legitimate concerns about Thomas's behavior, dozens of event reports remain. Collectively, the reports indicate a 'pattern' of worrisome behavior."); *id.* at 10 ("[T]he leadership at Cook repeatedly expressed concern about the persistent issue the event reports themselves represented—the 'strained and ineffective' 'dynamic between [Thomas] and the non-physician members of the health care team.'"). Thus, this element has clearly been met.

   *Fourth*, the action was taken "after a reasonable effort to obtain the facts of the matter." 42 U.S.C. § 11112(a)(2). This prong is met when "the totality of the process leading to the professional review actions evidenced a reasonable effort to determine the facts." *Reed v. Franklin Parish Hosp. Service Dist.*, Case No. 04-1481, 2006 WL 3589676, at *6 (W.D. La. Dec. 11, 2006). Courts have found that "an effort to obtain the facts is typically reasonable where the process has these characteristics: information has been gathered from individuals with firsthand knowledge; the physician at issue has been allowed to tell his version of events and to make a record; and several layers of review have been conducted by different bodies." *Emlich v. OhioHealth Corp.*, Case No. 2:14-cv-1697, 2016 WL 7406536, at *12 (S.D. Ohio Dec. 22, 2016) (citing *Johnson v. Spohn*, 334 F. App'x 673, 680-81 (5th Cir. 2009); *Meyers v. Columbia/HCA Healthcare Corp.*,

341 F.3d 461, 469 (6th Cir. 2003); *Bryan v. James E. Holmes Reg'l Med. Ctr.*, 33 F.3d 1318, 1335 (11th Cir. 1994)). As detailed the summary judgment record, Defendants followed these steps. *See* Dkt. 63-1 at 4 (Dr. Reaves testified that he spoke with Valerie Gibbs, who shared "several stories of her personal observations about Dr. Thomas" as well as "numerous reports she received from her staff in the operating room."); *Id*. at 9–10, 23–24 (Dr. Reaves' and Dr. Beams' testimony regarding Dr. Thomas's multiple meetings with the Peer Assistance Committee and Joint Credentials Committee); *Id*. at 56 (Cychol's testimony outlining the process of the Peer Assistance Committee recommendation being adopted by the Joint Credentials Committee, Medical Board, and Executive Committee).

*Fifth*, under the terms of Section 11112, Defendants were not required to provide "adequate notice and hearing procedures" to Dr. Thomas since no adverse professional review action was ultimately taken. 42 U.S.C. § 11112(a)(3). While section 11112(a)(3) discusses notice and hearing procedures, there is an exception in the statute "where there is no adverse professional review action taken." *Id*. at § 11112(c)(1)(A). The only recommendations made by Cook Children's regarding Dr. Thomas's privileges was an eight-month extension of his privileges. *See* Dkt. 134 at 11-12. "[A]n extension of privileges is certainly not adverse." *Benson v. St. Joseph Regional Health Center*, Case No. H-04-4323, 2007 WL 7120757, at *4 (S.D. Tex. Mar. 22, 2007).

*Lastly*, Defendants' professional review was taken "in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts." 42 U.S.C. § 11112(a)(4). Courts' analysis under this prong "closely tracks" analysis under Section 11112(a)(1). *Poliner v. Texas Health Systems*, 537 F.3d 368, 384 (5th Cir. 2008). As Defendants clearly satisfied the first three prongs, for the reasons discussed above and in the summary judgment record, Defendants have established that there was an objectively reasonable basis for

investigating the complaints against Dr. Thomas and a conditional reappointment was warranted based on the facts then known. *See id*.

As Defendants satisfy the elements of 42 U.S.C. § 11112(a), they are eligible to recover their fees and expenses for Plaintiff's conduct.

    **B.**    <u>**Defendants Can Recover Fees Under the Remaining Statutes as They Substantially Prevailed in this Matter.**</u>

As the Court has dismissed all of Dr. Thomas's claims against Defendants, Defendants have substantially prevailed in this litigation. *See Moore v. Williamsburg Regional Hospital*, Case No. 4:05-2940-TLW, 2008 WL 11429591, at *1 (D. S.C. Sept. 23, 2008) ("The defendants 'substantially prevailed' when the Court determined that they were entitled to summary judgment.").

**III.**    <u>**Defendants are Entitled to Recover Fees as Many of Plaintiff's Claims and Actions Taken During this Suit were Frivolous and Unreasonable.**</u>

The Defendants are entitled to an award of fees and expenses because Plaintiff's claims and his conduct during the litigation in pursuing his claims were "frivolous, unreasonable, without foundation, or in bad faith." 42 U.S.C. § 11113. The vast majority of the causes of action pursued by Plaintiff had no possible factual basis and were frivolous and pursued in bad faith. Moreover, Plaintiff's actions throughout the litigation were designed to maximize Defendants' expenses and harass the hospital. The Court, therefore, should award Defendants their fees.

The facts in this case are remarkably similar to the facts before the district court in *Rooney*. *Rooney v. Med. Ctr. Hosp. of Chillicothe*, 1995 WL 437548 (S.D. Ohio Mar. 8, 1995). In *Rooney*, the plaintiff was a doctor with a severe behavioral problem. *Id.* at *1. He received dozens of complaints about his conduct, and the hospital he worked for repeatedly tried to help him improve his interpersonal communications with other physicians and medical staff. *Id*. When the plaintiff refused to cooperate, he was let go. *Id*. Soon afterwards, the plaintiff filed suit claiming his

termination was illegal. The court rejected plaintiff's positions entirely and granted summary judgment. *Id*. Noting that the plaintiff's termination was clearly justified by his abusive conduct, the court held that the lawsuit's allegations to the contrary were unsupportable. "The Court concludes that Plaintiff's claims in this action are merely a continuation of Plaintiff Rooney's abusive, harassing, and intimidating behavior towards his colleagues, coworkers, and patients." *Id*. at *3. The court, therefore, awarded the defendants their fees for having to respond to the physician's allegations. *Id*. at *4.

The situation in *Rooney* is the same as what is before the Court here. As the Court noted in its Memorandum Opinion & Order, Dr. Thomas had an unprecedented number of complaints lodged against him for his abusive conduct toward the medical staff. *See* Dkt. 134 at 7 ("In the span of twelve years, Thomas had accumulated approximately fifty event reports and complaints— an extraordinarily high number in comparison to his peers."). He had been warned, cited, and referred to a psychologist for help with his anger management. *Id*. at 3–5. And while the psychologist apparently helped for several years, Plaintiff's behavior regressed dramatically in 2018. *Id*. at 5. Just as had happened previously, Plaintiff was sent to the Peer Assistance Committee who recommended a course of action designed to improve Plaintiff's performance and interactions with the medical staff. Unlike the prior occasion, Plaintiff refused to cooperate and resigned. *Id*. at 12. Just as in *Rooney*, Plaintiff pursued a lawsuit seeking to deny his own actions. And, like *Rooney*, his lawsuit and litigation conduct were baseless.

The vast majority of Plaintiff's claims were frivolous. Those include causes of action dismissed by the Court early in this case and claims dismissed via Summary Judgment. Such claims include:

- Plaintiff asserted multiple causes of action alleging discrimination for an alleged disability. As the Court held in its ruling on Defendants' Motion to Dismiss, there was no legitimate basis for this claim. Plaintiff was not disabled nor was he treated as a disabled person. This claim was baseless. *See* Dkt. 21 at 20 (stating that Plaintiff's allegations as to his disability claim were "conclusory and inadequate").

- Plaintiff also asserted multiple claims alleging he was the victim of a hostile work environment. The Court granted Defendant's Motion to Dismiss on these claims finding that Plaintiff had no valid cause of action for the work environment. *See id.* at 18 (stating that it would be "a stretch of the definition of 'harassment' to hold that [Plaintiff's allegations of Defendants' actions] are objectively offensive").

- Late in this litigation, Plaintiff introduced a new argument that he had been constructively discharged from his employment. *Compare* Dkt. 63-2 at 179 (Plaintiff's First Supplemental Responses to Interrogatories stated that Defendants "unlawfully terminated Plaintiff.") *with id.* at 265 (Plaintiff's Second Supplemental Responses to Interrogatories changed the alleged adverse action to include that Defendants "denied Plaintiff the enjoyment of the same terms, conditions and privileges of employment when compared to his similarly situated peers.") and id. at 393 (Plaintiff's Fourth Supplemental Responses to Interrogatories added that Defendants caused harm to Plaintiff's "professional reputation."). In that way, Plaintiff alleged that the Performance Improvement Plan he was asked to agree to created an environment so toxic that no reasonable physician would work under such conditions. As the Court held in granting summary judgment here, Plaintiff had no legitimate basis for this position. *See* Dkt. 134 at 16–19 (discussing four

reasons why Plaintiff's allegations of constructive discharge fail). Not only did dozens of doctors regularly accept such conditions, but Plaintiff had done so previously. Most damningly, however, Plaintiff should have known that his constructive discharge claim was groundless, as numerous courts in this circuit have held that a constructive discharge claim requires even worse conditions than a hostile work environment claim, which the Court had already ruled upon. Thus, Plaintiff had no possible basis for asserting such a claim here.

- Additionally, days before the summary judgment deadline, Plaintiff added yet another allegation in an attempt to establish that he suffered an adverse employment action: that Plaintiff had been demoted. *See* Dkt. 63-2 at 396 (Plaintiff asserted, for the first time in his Third Supplemental Responses to Interrogatories—served on December 9, 2021—that Defendants "unlawfully demoted" him.). Plaintiff attempted to argue that Cook Children's condition that he meet with nursing administrators caused non-physicians to have supervisory roles over him. As the Court noted in granting summary judgment, Plaintiff's allegations wholly fail to meet the standard of a "demotion" under established case law. *See* Dkt. 134 at 19–20. In fact, Plaintiff's own deposition testimony contradicted his argument. *See id*. ("But even Thomas admits that providing reports to the Credentials Committee does not place a person in a supervisory role."). Therefore, as clearly stated by the Court, Plaintiff's allegation of a demotion was unsupported in law and in fact.

- Plaintiff also had no justification for pursuing claims against Defendants Merrill and Cychol. Merrill, the president of the Cook Children's System, and Cychol, the president of Cook Children's Medical Center, were sued despite the fact that neither

played any role in the actions about which Plaintiff complained. *See* Dkt. 63-1 at 50–60 (Merrill and Cychol's testimony describing that they each play no role in the credentialing or peer review process). Despite this fact, Plaintiff pursued both of these Defendants in an effort to maximize pressure and extort a settlement, only dropping these claims rather than respond to their Motion for Summary Judgment. *See* Dkt. 72-1 at 13 (Plaintiff conceded summary judgment as to Merrill and Cychol, despite making numerous allegations of discriminatory and retaliatory acts taken by Merrill and Cychol specifically in Plaintiff's Fourth Supplemental Responses to Interrogatories, served three days before the summary judgment deadline.).

- All of Plaintiff's allegations of discrimination were frivolous as Plaintiff had no good faith basis for alleging that he suffered an adverse employment event. Although Plaintiff initially asserted in his Original Complaint that he was terminated, that allegation was blatantly false. Plaintiff was asked to take certain actions designed to improve his relationship with the medical staff and, rather than do so, he resigned. *See* Dkt. 134 at 11–12. As the Court noted in its ruling on the Motion to Dismiss, failing to agree to a performance improvement plan is per se not an adverse employment action. *See id*. at 16–17 ("To argue no reasonable physician would tolerate such conditions is simply inconsistent with the facts."). As Plaintiff suffered no adverse employment action his multiple causes of action asserting discrimination were frivolous.

Plaintiff's misconduct went beyond the meritless causes of action and extended to way he and his counsel pursued his claims before the Court. Such conduct included:

- Plaintiff's conduct in his initial deposition is well known to the Court. Plaintiff was obstructionist, refused to answer questions, and spoke for hours while reading paper in an effort to run out the deposition clock. *See* Dkts. 73, 73-1 (outlining Plaintiff and his counsel's egregious and disruptive conduct during his first deposition and their continued efforts to impede Defendants' ability to reopen his deposition at a reasonable time). Indeed, at the hearing on Defendants' Motion to Reopen the Deposition, Plaintiff's local counsel admitted that the Plaintiff's conduct was improper.

- Plaintiff's discovery responses provided a constantly shifting series of allegations that were improper both in substance and timing. Plaintiff initially refused to provided minimal explanations for his allegations of discrimination and retaliation and identified only the surgeons in his group. *See* Dkt. 55-1 at 37–39 (Plaintiff objected and did not respond to Cook Children's interrogatories asking him to identify every act that he alleged constituted illegal discrimination and retaliation). Mere hours before his deposition was to begin, Plaintiff amended his disclosures to identify more than 200 claims of discrimination and retaliation. *See* Dkt. 63-2 at 147–220. Almost every one of the claims provided are per se not actionable or are simply nonsensical. *See id.* (For example, almost all of the 200 plus examples of retaliation identified in his interrogatory responses take place prior to Plaintiff engaging in any protected conduct. Thus, these examples cannot be retaliatory as there is nothing to retaliate against.) Then, days before Defendants' Motion for Summary Judgment is due, Plaintiff amended his discovery again to now claim well over 1,000 comparators and hundreds of new claims of discrimination and

retaliation. *See id*. at 402–481 ("Dr. Thomas alleges that he was treated differently from all of his similarly situated peers who are physicians providing medical services at Cook."). These claims suffered from the same shortcomings as the earlier answers. Tellingly, when it came time for Plaintiff to respond to Motion for Summary Judgment, he identified two comparators and limited his claims of discrimination and retaliation. The discovery was designed to harass and waste Defendants' resources and had no good faith basis.

- Plaintiff's demands regarding documents were made in bad faith and designed solely to dramatically raise the costs of litigation. As the Court has seen through motion practice, every time Plaintiff made a demand for documents, he demanded that they be produced and redacted on an extraordinarily tight timeline. *See, e.g.*, Dkt. 34-1 at 75, 81, 109. Also, because of his extremely broad list of comparators, Plaintiff demanded tens of thousands of pages of documents that contained highly confidential patient information and peer review. Thus, the documents required extensive redactions. In order to comply with Plaintiff's demands, Defendants were required to utilize large numbers of lawyers from around the firm to perform rush document review and redactions. But Plaintiff's demands were not made in good faith. Indeed, after demanding that Defendants work around the clock to produce documents on an expedited schedule, Plaintiff would usually wait months to actually review the materials. Indeed, Plaintiff's counsel admitted to Defendants that counsel did not download hundreds of documents served by Defendants within the 30-day period in which the download link was active, and Plaintiff's counsel further requested that Defendants extend the download period for those

productions. And, when the materials were finally opened and examined, Plaintiff frequently demanded that the documents be reproduced with a totally different redaction scheme on an expedited basis such that the entire process would start over again. The end result of such conduct was that Defendants were required to spend well over $1 million to review, redact, and produce documents which, once Plaintiff settled on comparators, was mostly a wasted exercise.

**IV.**     **An Award of $1 Million in Fees and Expenses is Reasonable and Appropriate for Defending Against Plaintiff's Bad Faith Claims and Tactics**

As demonstrated by the Declaration of Geoffrey S. Harper, $1,000,000.00 represents a reasonable and necessary fee for responding to the baseless and frivolous actions and claims of Plaintiff.

"The Fifth Circuit requires that the claimants establish a reasonable hourly rate and the total numbers of hours expended on this litigation, _or_ otherwise establish by particular methods of billing or calculation the requisite evidence of reasonable and necessary attorneys' fees." *Choice Hotels Int'l, Inc. v. Cheema Invs*., LLC, No. 3:11-CV-01762-O, 2013 WL 12125998, at *7 (N.D. Tex. Feb. 20, 2013) (internal citations omitted); *accord Long v. H & P Cap., Inc*., No. 3:11-CV-00547, 2013 WL 3809672, at *3 (N.D. Tex. July 23, 2013).  This is best proven through an affidavit from a responsible attorney.  *Choice Hotels*, 2013 WL 12125998, at *7.  In addition to the affidavit, the claimant should provide adequate documentation of the hours actually expended. *Bos. Pizza Restaurants, L.P. v. Bay Three Ltd., Inc*., No. 3:12-CV-00426-O, 2013 WL 12123896, at *8 (N.D. Tex. July 16, 2013) (ordering plaintiff to produce additional information as its attorney affidavit alone, without attached invoices, was insufficient).

Here, as outlined in Mr. Harper's Declaration, Defendants are being charged the normal and customary rates of Winston & Strawn with a 10% discount.  Harper Dec. ¶ 8. Due to the

litigation tactics employed by Plaintiff, a plethora of attorneys were utilized throughout the life of this case. *Id.* ¶¶ 7, 11-16. Moreover, those same tactics demanded a tremendous number of hours to respond to. *Id.* ¶¶ 11-17. Although several juries and courts have found Winston & Strawn's rates (or the comparable rates of those attorneys at prior firms) reasonable, Defendants are not seeking to recover the normal rates nor the full amount of hours expended. Instead, the requested award amounts to approximately 20% of the actual fees incurred. *Id.* ¶ 20.

Even if one were to reduce the charged rates – which are already discounted 10% - by an additional 50% and simultaneously reduce the amount of hours spent by 50%, the result would be 20% more than is being requested here. *Id.* ¶ 22. Thus the hourly rates presented here under this scenario are far lower than what another court found reasonable for Winston & Strawn. *See SAP America, Inc. v. Investpic, LLC*, No. 3:16-CV-02689-K, 2018 WL 6329690 (N.D. Tex. Dec. 4, 2018) (finding that Winston's rates would be reasonable after a 35% reduction of partner rates and 15% reduction in associate rates); *see also Veach v. State Farm Lloyds*, No. 3:19-cv-02312-BT, 2021 WL 5920903 (N.D. Tex. Dec. 15, 2021) (approving rates higher than the effective rate being sought here).

Using any lodetar method, therefore, the requested $1 million represents far less than the standard reasonable and customary fee in the Northern District of Texas for cases such as this by attorneys with similar experience levels. Harper Dec. ¶ 23.

## CONCLUSION

For the foregoing reason the Court should grant this Motion and award Defendants $1,000,000.00 in expenses and fees due to Plaintiff's improper claims and litigation conduct.

Date: <u>May 16, 2022</u>                    Respectfully submitted,

                                            <u>/s/ Geoffrey S. Harper</u>

                                            Steven H. Stodghill
                                            TX Bar No. 19261100
                                            sstodghill@winston.com
                                            Geoffrey S. Harper
                                            TX Bar No. 00795408
                                            gharper@winston.com
                                            Claire E. Dial
                                            TX Bar No. 24116283
                                            cdial@winston.com
                                            **WINSTON & STRAWN LLP**
                                            2121 North Pearl Street, Suite 900
                                            Dallas, TX 75201
                                            Telephone: 1-214-453-6500
                                            Telefax: 1-214-453-6400

                                            Cardelle B. Spangler
                                            IL Bar No. 6242570
                                            CSpangler@winston.com
                                            *Pro Hac Vice Admission*
                                            **WINSTON & STRAWN LLP**
                                            35 West Wacker Drive, Suite 40
                                            Chicago, IL 60601
                                            T: 1-312-558-5600
                                            F: 1-312-558-5700

                                            ***ATTORNEYS FOR DEFENDANTS***

<u>**CERTIFICATE OF CONFERENCE**</u>

        The undersigned certifies that he conferred with counsel for Plaintiffs on May 16, 2022 regarding the relief requested in this motion and that Plaintiff's counsel indicated that they were opposed to this motion.  The matter, therefore, is submitted to the Court for resolution.

                                            <u>/s/ Geoffrey Harper</u>
                                            Geoffrey Harper

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this documents via the Court's EM/ECF system on May 16, 2022.

/s/ *Geoffrey Harper*
Geoffrey Harper