IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PATRICK THOMAS,<br><br>               Plaintiff<br><br>v.<br><br>COOK CHILDREN'S HEALTH CARE SYSTEM, et al.,<br><br>               Defendants | § § § § § § § § § § § § | Civil Action 4:20-cv-01272-O |

## **DECLARATION OF GEOFFREY S. HARPER**

1. My name is Geoffrey S. Harper. I am over 18 years of age, of sound mind, and capable of making this declaration. The facts stated within this declaration are within my personal knowledge and true and correct.

2. I am a partner at the law firm of Winston & Strawn, LLP and licensed to practice law in the State of Texas. I am lead counsel for the Defendants in this lawsuit and it is in that capacity that I have obtained the knowledge of the facts that are listed herein.

3. I obtained a B.A. from Emory University in 1990, and a J.D. from The University of Texas at Austin School of Law in 1995. After graduation, I clerked for the Honorable Procter Hug, Jr., Chief Judge of the Ninth Circuit Court of Appeals. I began work as an associate with the law firm of Susman Godfrey, LLP in Dallas, Texas practicing complex commercial litigation when my clerkship concluded. After several years, I joined the law firm of Lynn, Stodghill, Melsheimer & Tillotson, LLP as a litigation associate. In 2000, I and several other LSMT attorneys opened the Dallas office of Fish & Richardson, P.C. where I was elevated to partner. After more than 17 years at Fish & Richardson, I left to help open the Dallas office of Winston & Strawn.

4. For my entire career as a practicing attorney, I have exclusively worked in commercial litigation and maintained my office within the Northern District of Texas. I have tried dozens of lawsuits as lead counsel and have handled cases throughout the United States (as well as several international proceedings). As part of my regular practice, I regularly monitor the rates charged by attorneys in the Northern District of Texas, including Fort Worth. I have tried multiple lawsuits in the Northern District of Texas, and I have handled several lawsuits in Tarrant County.

5. I am familiar with the reasonable and necessary attorneys' fees charged for civil actions – including employment discrimination cases – such as this case within the Northern District of Texas. I am also familiar with the legal standard for an award of fees, including the factors presented by the Texas Supreme Court in *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

6. I have personal knowledge of the work performed in this case by Winston & Strawn for the Defendants. The services were reasonable, necessary, and customary and the Defendants have fully paid all bills submitted to them by Winston & Strawn.

A. **Reasonable Hourly Rates**

7. Due to various factors discussed below, numerous lawyers have worked on this case. Those attorneys, and their experience level, include:

    a. Geoffrey Harper, partner – As noted above, I have practiced law for more than 25 years exclusively in the area of commercial litigation. My current standard hourly rate is $1,175.00/hour.

    b. Steven Stodghill, partner – Mr. Stodghill graduated from The University of Texas at Austin School of Law in 1987 and has exclusively practiced commercial litigation since that time. Mr. Stodghill has played a key

2

        strategic role in this case and has had worked extensively setting strategy and working with the clients. His current standard hourly rate is $1,345.00/hour.

c.     Cardelle Spangler, partner – Mrs. Spangler is the managing partner of Winston's Chicago office and a 1997 graduate of Washington University School of Law. She was brought on to this case due to her expertise in employment litigation and discrimination cases. She acted as co-lead trial counsel. Her current standard hourly rate is $995.00/hour.

d.     Tom Walsh, partner – Mr. Walsh graduated from The University of Texas at Austin School of Law in 1992 and has exclusively practiced commercial litigation since that time. He was brought onto this case to help with several key depositions as the discovery period was streamlined and there were days when Mr. Harper had a conflict. His current standard hourly rate is $1,255.00/hour.

e.     Mike Gaddis, of counsel – Mr. Gaddis received his B.A., with honors, from Wesleyan University in 1992, his M.St. from Oxford University in 1993, and his Ph.D., with distinction, from Princeton University in 1999. He received his J.D. from the University of Texas at Austin School of Law in 2009. Mr. Gaddis exclusively practices commercial litigation and played a key role in briefing and research for this case. His current standard hourly rate is $1,060.00/hour.

f.     Alexandra Aurisch, associate – Ms. Aurisch is a commercial litigator who graduated from the University of Virginia School of Law and was admitted

to the bar in 2014. Ms. Aurisch worked with Defendants' expert witnesses and would have been part of the courtroom trial team. Her last standard hourly rate was $985.00/hour.

g. Claire Dial, associate – Ms. Dial is a 2019 graduate of The University of Texas at Austin School of Law and has worked on this case as the primary associate since Winston & Strawn was retained. Her current standard hourly rate is $725.00/hour.

h. Dylan French, Will Hamilton, Eric Halpern, Amanda Jereige, Shannon Lemajeur, Kate Marcom, Gianna Santoro, Mike Woodrum, and Ashley Wright, associates – Mr. French, Mr. Hamilton, Mr. Halpern, Ms. Jereige, Ms. Lemajeur, Ms. Marcom, Ms. Santoro, Mr. Woodrum, and Ms. Wright are associate attorneys with standard rates of, in order, $725.00/hour, $670.00/hour, $725.00/hour, $660.00/hour, $670.00/hour, $795.00/hour, $640.00/hour, $670.00/hour, and $725.00/hour. Mr. Halpern (2019), Mr. French (2019), Ms. Marcom (2016), and Mr. Woodrum (2020) are graduates of The University of Texas at Austin School of Law. Mr. Hamilton is a 2020 graduate of the SMU School of Law. Ms. Jereige is a 2018 graduate of the Georgetown University Law Center. Ms. Lemajeur is a 2020 graduate of Northwestern Pritzker School of Law. Ms. Santoro is a 2021 graduate of The University of Chicago Law School. Ms. Wright is a 2018 graduate of the UNT Dallas College of Law. Each of them provided emergent help in this case as needed for document review, redaction, research, and briefing.

8. For this case, each of the Winston & Strawn lawyers were billed to the Defendants at their normal and customary rates, minus a 10% discount provided to the clients.

9. Although Defendants are not seeking to recover the full amounts paid to Winston & Strawn, I am personally aware that numerous courts and juries have found that the rates charged by these lawyers and others at Winston & Strawn (or counsel's comparable rates while at Fish & Richardson) were reasonable and necessary for the DFW Metroplex taking into account the qualifications of the attorneys involved. While Winston's rates are on the high end of the litigation spectrum, they are in no way the highest.

10. That being said, Defendants are only seeking to recover a fraction of the amounts paid which, as noted more below, leads to an effective hourly rate that is reasonable and well within the average fee ranges for the region.

**B.     Reasonable Hours Expended.**

11. This case required a tremendous amount of manpower by defense counsel. Plaintiff's discovery requests – which were not limited to any comparators – required the review of an extremely large number of documents. Moreover, the documents requested by Plaintiff contained extremely sensitive and confidential information. Such information included the medical records of thousands of sick children, identifying personal information of the patients and their parents, and highly confidential peer review materials. This required that every document be reviewed and carefully redacted prior to production.

12. The document productions were made even more costly due to the rushed nature of the redactions, as Plaintiff kept insisting that the materials be produced quickly. Moreover, because Plaintiff refused to name comparators and sought the records for every physician ever to

appear before the various committees, tens of thousands of documents were produced that were not necessary.

13. Moreover, discovery was difficult and required tremendous amounts of work and effort due to the extremely large number of claims made by the Plaintiff and the fact that the claims constantly shifted. For example, Plaintiff's Original Complaint alleged that the Event Reports made against him had been found unmeritorious and then revived pursuant to a retaliatory plot. All of the work done by Defendants on this allegation was rendered moot when Plaintiff changed his version of events to assert that the claims had not been reviewed at all. Then at his deposition, Plaintiff suddenly asserted that every Event Report and complaint made against him was a racist plot evidencing discriminatory intent (which was a position Plaintiff had never raised to that point).

14. Plaintiff's discovery responses presented a constantly shifting version of events that added more and more claims of discrimination and changed who the comparators were. And many of his responses made clear that Plaintiff had not reviewed the documents that he had demanded be produced on a rush basis. For example, Plaintiff initially claimed as a comparator a "white" physician who was given remedial training on EPIC that was not provided to Plaintiff, which he considered discriminatory. However, as Defendants' discovery responses made clear, the physician in question was actually black and he required EPIC training because, unlike Plaintiff, he was not an employee of Cook Children's.

15. Indeed, Plaintiff's decision to change his discovery responses and allegations right before the deadline to file summary judgment motions required a massive amount of work by the Defendants who had to completely redo the vast majority of the supporting declarations and briefing.

16. The end result of the claims and shifting nature of the factual allegations was litigation that required the review of tens of thousands of documents (many of which became irrelevant), required the analysis and factual and legal research of hundreds of alleged incidences of discrimination and retaliation (most of which were dropped), and required the Defendants to spend exponentially more hours of work on this matter. Indeed, when Plaintiff produced his legal bills for the work his counsel had done in this matter the results were shocking: Plaintiff had not reviewed the documents produced by Defendants when they were produced, and had hardly spent time reviewing Defendants' documents. In fact, at one point, Plaintiff's counsel requested that Defendants extend the download time period on several of Defendants' production sets because Plaintiff's counsel failed to download the production within the 30-day time period allotted by Defendants' production software. Thus, it appeared that Plaintiff had engaged in litigation tactics that were designed to inflate Defendants' costs.

17. Through the course of this litigation, Winston has not billed Defendants for more than $300,000.00 of work that was performed. But even with those write-offs, the amount of work required to prepare this case from December 1, 2020 through May 16, 2022 involved thousands of hours for the attorneys' mentioned above. Those hours include:

    a. Mr. Harper – 1,680.7
    b. Mr. Stodghill – 880.1
    c. Mrs. Spangler – 258.3
    d. Mr. Walsh – 48.5
    e. Mr. Gaddis – 794.3
    f. Ms. Aurisch – 111.4
    g. Ms. Dial – 1,257.5

      h.     Mr. French – 60.8

      i.      Mr. Hamilton – 61.1

      j.      Mr. Halpern – 117.6

      k.     Ms. Jereige – 10.1

      l.      Ms. Lemajeur – 64.7

      m.    Ms. Marcom – 54.3

      n.     Ms. Santoro – 159.2

      o.      Mr. Woodrum – 264.3

      p.      Mrs. Wright – 16.0

18. Although Defendants are not seeking to recover for all of the hours spent by its counsel in this case, I have personally reviewed all of the bills in this matter and I strongly believe that the work was reasonable and necessary for the defense of this case.

19. Moreover, Cook Children's has reviewed and paid all of the bills mentioned above.

**C.**    **The Reasonableness of the Fees Sought Here.**

20. As mentioned in the Motion for Expenses and Fees, Defendants have asked the Court to award them $1,000,000.00 for fees and expenses. This amount represents approximately 20% of the fees incurred.

21. I am personally familiar with the claims made and actions taken by the Plaintiff in this lawsuit. I am also familiar with the fees charged for responding to Plaintiff's actions and the reasonable and necessary rates and charges for such actions that are customary and appropriate for similar attorneys in the Northern District of Texas.

22. In my opinion, $1 million represents an extremely reasonable fee for the actions here and are well within the standard rate range for attorneys in this district of similar experience

and skill. If, for example, one was to determine that the fees billed here (90% of the Winston standard rates) were excessive and decide to reduce them by 50% _and_ one were to also find that 50% of the hours billed were inappropriate, the resulting total would still exceed the $1 million requested by approximately 20%.

23. Using any lodetar method, therefore, the requested $1 million represents far less than the standard reasonable and customary fee in the Northern District of Texas for cases such as this by attorneys with similar experience levels.

24. Attached hereto as Exhibit A is a true and correct copy of the redacted legal bills that have been sent to Defendants in this case. All of which have been paid in full.

25. Attached hereto as Exhibit B is a true and correct copy of the attorney biographies for the attorneys listed above who are still employed by Winston & Strawn.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 16, 2022.

_____
Geoffrey S. Harper