**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

---

| | |
|---|---|
| PATRICK THOMAS, | § |
| | § |
| Plaintiff, | § |
| v. | § Civil Action No. 4:20-cv 1272-O |
| | § |
| COOK CHILDREN'S HEALTH CARE SYSTEM; | § |
| COOK CHILDREN'S PHYSICIAN NETOWRK; | § JURY DEMANDED |
| AND COOK CHILDREN'S MEDICAL CENTER | § |
| and in their individual and official capacities, RICK | § |
| MERRILL, NANCY CYCHOL, W. BRITT NELSON, | § |
| LARRY REAVES, and DONALD BEAM, | § |
| | § |
| Defendants. | § |
| | § |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR ATTORNEY FEES**
**AND BRIEF IN SUPPORT THEREOF**

---

**STACEY GRAY PC**
*/s/ Stacey M. Gray*
Stacey M. Gray, Esq.
Bar No. 2985943NY
sgray@staceygray.com
60 East 42nd Street, Suite 4600
New York, NY 10165
Phone: (212) 227-9163
Fax: (212) 227-8845

**TREMAIN ARTAZA, PLLC**
*/s/ Christine A. Hopkins*
Christine A. Hopkins
Texas State Bar No. 24095768
christine@tremainartaza.com
4925 Greenville Ave, #200
Dallas, TX 75206
Direct: (469) 573-0297
Fax: (214) 254-4941

**SANFORD FIRM**
*/s/ Brian Sanford*
Brian Sanford
Texas State Bar No. 17630700
bsanford@sanfordfirm.com
*/s/ Elizabeth Jane "BB" Sanford*
Elizabeth Jane "BB" Sanford
Texas State Bar No. 24100618
esanford@sanfordfirm.com
1910 Pacific Avenue, Suite 15400
Dallas, TX 75201
Telephone: (214) 717-6653
Facsimile: (214) 919-0013

**ATTORNEYS FOR PLAINTIFF**

**<u>Table of Contents</u>**

<u>Page</u>

I.    SUMMARY OF ARGUMENT………………………………..……………………..1

II.   LEGAL STANDARD…………………………………………………..……………3

III.  LEGAL ARGUMENT……………………………………………………………5

     A.  Dr. Thomas' Discrimination and Retaliation Claims are Not Frivolous…………5

       i.   Defendants concede that Dr. Thomas' retaliation is well-founded…………..6

       ii.  Dr. Thomas' discrimination claims are reasonably grounded in fact…………8

         a.  Fifth Circuit and Texas case law support Dr. Thomas' adverse
           action allegations…………………………………..……………...12

         b.  Dr. Thomas relied on case law regarding demotions and loss of
           standing………………..…………………..…………………13

     B.  Dr. Thomas Had a Reasonable Basis for the Two Claims Dismissed at the
       12(b)(6) Stage…………………………………………………………………15

     C.  Dr. Thomas Decided in Good Faith Not to Oppose Cychol & Merrill's
       Rule 56 Motion.. ………….…………………………………….…………15

     D.  None of the Discovery Issues Raised by Defendants Warrant
       a Shifting of Fees……………….……………………………………………..16

     E.  Defendants Failed to Place Plaintiff on Notice of the HCQIA Claim, Thus
       Waiving It……………………………………………………..……………20

     F.  Defendants Cannot Obtain HCQIA Fees Due to Their Broken Review
       Procedure……………………...…………………………………22

     G.  Defendants Failed to Segregate Their Fees And Seek Excessive Fees…………23

IV.   CONCLUSION……………………………………………………………...…25

<u>**Table of Authorities**</u>

<u>**Pages**</u>

*Adcock v. Sunquest Properties Inc.*,
    421 F. App'x 446 (5th Cir. 2011)…………………………….……………………13

*Al-Saud v. Youtoo Media, L.P.*,
    754 Fed. Appx. 246 (5th Cir. Oct. 22, 2018)…………………………….………..21

*Anderson v. Harrison Cnty.*,
    639 F. App'x 1010 (5th Cir. 2016)……………………………………….…………..5, 11

*Autry v. Fort Bend Indep. Sch. Dist.*,
    704 F.3d 344 (5th Cir. 2013)…………………….……………………………….…..10

*Badgerow v. REJ Props., Inc.*,
    974 F.3d 610 (5th Cir. 2020)………………………………………………………..4, 24

*Benjamin v. Aroostook Medical Center*,
    937 F. Supp. 957 (D. Me. 1996), aff'd by 113 F.3d 1 (1st Cir. 1997)…………….....……….11

*Broussard v. LaFayette Consol. Gov't*,
    No. 6:13-cv-2872 (W.D. La. Jan. 29, 2015), aff'd by
    No. 6:13-cv-2872 (W.D. La. Feb. 19, 2015) ……………………………………..24

*Brown v. Presbyterian Healthcare Services*,
    101 F.3d 1324 (10th Cir. 1996),
    aff'd by No. 6:13-cv-2872 (W.D. La. Feb. 19, 2015)……………………….…………23

*Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*,
    434 U.S. 412 (1978)…………………………………………………………….…1, 2, 10

*Chudacoff v. University Medical Center of Southern Nevada*,
    609 F. Supp. 2d 1163 (D. Nev. 2009)……………………….…………………………21

*Cunningham v. Burns*,
    CA No. 3:12-CV-1824-L (N.D. Tex. Oct. 21, 2014)……………………………………6

*Dean v. Riser*,
    240 F.3d 505 (5th Cir. 2001)……………………………………………...3, 16

*E.E.O.C. v. Rite Way Serv., Inc.*,
    819 F.3d 235, 245 (5th Cir. 2016)…………………………….…………………8

*Fox v. Vice*,
    563 U.S. 826 (2011)……………..………………………………………..24

## Table of Authorities

**Pages**

*Fralick v. Plumbers & Pipefitters Nat'l Pension Fund,* 2
    2011 WL 487754 (N.D. Tex. Feb. 11, 2011),
    aff'd, 420 Fed. Appx. 364 (5th Cir. 2011)……………………………………....………..……25

*Garrison v. Tex. S. Univ.,*
    2012 U.S. Dist. LEXIS 15912 (N.D. Tex. October 23, 2012)………………………………14

*Garza v. Mary Kay, Inc.,* 2010 U.S. Dist. LEXIS 84586,
    (N.D. Tex. Aug. 17, 2010)…………………………………………………….………………..14

*Gomez v. McDonald's Corporation,*
    CA 3:03-CV-0076-R (N.D. Tex. July 19, 2004)……………………..……………………….5

*Gray v. City of Galveston,*
    CA No. 14-12-00183-CV (Tex. App. May 21, 2013)………………….……………………14

*Greco v. Velvet Cactus, LLC,*
    No. 13-3514 (E.D. La. Nov. 25, 2014)………………………………………………………24

*Gupta v. Eastern Idaho Tumor Institute, Inc.,*
    140 S.W.3d 747 (Tex. App. 2004)……………………………………………………………14

*Guthrie v. J.C. Penney Co., Inc.,*
    803 F.2d 202 (5th Cir. 1986)…………………………………………….……………………14

*Hall v. Arkema, Inc.,*
    No.: 4:19-cv-02164 (S.D. Tex. Dec. 23, 2020)……………………..………………………16

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)………………………………………....……………………………..25

*Jeung v. McKrow,*
    264 F. Supp. 2d 557 (E.D. Mich. 2003)………………………….…………………………..11

*Johnson v. Halstead,*
    916 F. 3d 410 (5th Cir. 2019)……………………...……………………………………15

*Jones v. Texas Tech University,*
    656 F.2d 1137 (5th Cir. 1981)……………………………………………....………4, 5

*Knoth v. Keith,*
    No. 5:18-cv-49-DCB-MTP, (S.D. Miss. Sep. 30, 2020)…………………………………24

## <u>Table of Authorities</u>

<u>Pages</u>

*Leaumont v. City of Alexandria,*
    CA No. 13-2397 (W.D. La. Mar. 7, 2014)…………………..…………………………………15

*Lee v. Group 1 Software, Inc.,*
    CA No. 3:06-CV-0873-D (N.D. Tex. Jan. 7, 2008)……………………………………………...7

*Long v. Eastfield Coll.,*
    88 F.3d 300 (5th Cir. 1996)…………………………………………………………………7-8

*Martin v. El Nell Inc.,*
    CA No. 3:03-CV-2209-D (N.D. Tex. Sep. 7, 2005)………………………..………………..10

*McMillan v. Rust Coll., Inc.,*
    710 F.2d 1112 (5th Cir. 1983)……………………………………………...………………8

*Miller v. Huron Reg'l Med. Ctr., Inc.,*
    145 F. Supp. 3d 873 (D.S.D. 2015)…………………..………………………………………23

*Mooney v. Lafayette Cty. Sch. Dist.,*
    538 F. App'x 447 (5th Cir. 2013)…………………………………...………………………7

*Mota v. University of Texas Houston Health Science Center,*
    261 F.3d 512 (5th Cir. 2001)……………………………………………….…………………..12

*Muzquiz v. W.A. Foote Memorial Hosp., Inc.,*
    70 F.3d 422 (6th Cir. 1995)…………………………………………………..……………2, 8

*Myers v. City of West Monroe,*
    211 F.3d 289 (5th Cir. 2000)……………………………………………….……………………4

*Nicholson v. Securitas Security Services USA, Inc.,*
    830 F.3d 186 (5th Cir. 2016)……………………………………….…………………………9

*Obey v. Frisco Med Ctr, LLP,*
    Case 4:13-cv-00656 (E.D. Tex. May 2, 2015)……………………………..………………3, 6

*Osuagwu v. Gila Reg'l Med. Ctr.,*
    850 F. Supp. 2d 1216 (D.N.M. 2012)………………………………..………………………23

*Passons v. University, Tx. at Austin,*
    969 S.W.2d 560 (Tex. App. 1998)…………………………………...…………………………14

*Peterson v. Bell Helicopter Textron, Inc.,*
    806 F.3d 335 (5th Cir. 2015)……………………………….…………………………………21

**<u>Table of Authorities</u>**

<u>Pages</u>

*Plemer v. Parsons-Gilbane*,
713 F.2d 1127 (5th Cir. 1983)……………………………………….……………14

*Poliner v. Texas Health Systems*,
537 F.3d 368, 380 (5th Cir. 2008)……………………………….……………..23

*Rodriquez v. ConAgra Grocery Prods. Co.*,
436 F.3d 468 (5th Cir. 2006)…………………………..……………………..15

*Rooney v. Med. Ctr. of Chillicothe*,
C2-91-1100 (S.D. Ohio, March 8, 1995)…………………………...………………2

*Rudkin v. Roger Beasley Imps., Inc.*,
1:2017-CV-849-LY (W.D. Tex. July 2, 2019)………………………………5, 10

*Russ v. Memphis Light, Gas & Water*,
No. 14-02365 (W.D. Tenn. June 12, 2017)……………………...…………….24

*Santos v. Wincor Nixdorf, Inc.*,
CA 1:16-CV-440-RP (W.D. Tex. Mar. 25, 2019),
aff'd No. 19-50046 (5th Cir. Aug. 7, 2019)……………………………………11

*Sears v. Zions Bancorporation NA*,
No. 21-10448 (5th Cir. June 2, 2022)……………………….…………………9

*Shirley v. Chrysler First, Inc.*,
970 F.2d 39 (5th Cir. 1992)…………………………...…………………7

*Santamaria v. Dallas Independent School District*,
No. 3:06-CV-0692-L (N.D. Tex. Sep. 30, 2007)………………………………..……5

*Smigaj v. Yakima Valley Mem'l Hosp. Ass'n*,
269 P.3d 323 (Wash. Ct. App. 2012)…………………………...………………22

*Singh v. Blue Cross/Blue Shield of Massachusetts, Inc.*,
308 F.3d 25 (1st Cir. 2002)……………………………………………..21

*Solferini v. Corradi U.S.*, No. 20-40645,
(5th Cir. Aug. 13, 2021)………………………………….……………..20

*Starnes v. Wallace*,
849 F.3d 627 (5th Cir. 2017)…………………………...………………..7

*Stephens v. C.I.T. Group/Equipment Financing, Inc.*,
955 F. 2d 2013 (5th Cir. 1992)…………………………...…………………..14

## Table of Authorities

**Pages**

*Stratienko v. Chattanooga-Hamilton County Hosp. Auth*,
   No. 1:07-CV-258 (E.D. Tenn. May 27, 2009)………………………………….…………..16, 22

*Tex. Youth Comm'n – Evins Reg'l Juvenile Ctr. v. Garza,*
   No. 13-08-00527-CV, 2009 Tex. App. LEXIS 3143
   (Tex. App.-Corpus Christi May, 7, 2009)…………………………………..…………15

*Ubiñas-Brache v. Dallas County Medical Society,*
   261 S.W.3d 800 (Tex. App. 2008)……………………………………………………….3, 4

*United Industries, Inc. v. Simon-Hartley, Ltd.,*
91 F.3d 762, 765 (5th Cir. 1996)…………………………………………………………...20

*Ward v. Lamar Univ.,*
   484 S.W.3d 440 (Tex. App. 2016)…………………………………...………………………14

*Westfall v. Luna*,
   516 F. Supp. 3d 602 (N.D. Tex. 2021)…………………………………………………..4

*Wilson v. William Hall Chevrolet, Inc.,*
   871 F. Supp. 279 (S.D. Miss. 1994)…………………………………..……………..21

*Young v. Southwestern Savings and Loan Assoc*,
   509 F.2d 140 (5th Cir. 1975)………………………………..…………………………14


**Statutes**

42 U.S.C. § 1981…………………………………………………………………..1, 6

42 U.S.C. § 1988……………………………………………………………………….4

Title VII of the Civil Rights Act of 1964……….……………………………………1, 4

42 U.S.C. § 1111(a)(1)(D)………………………………………………..……….2

42 U.S.C. § 1112(a)………………………………………………….……………….4, 21

42 U.S.C. § 11113………………………………………………………..………………21

TCHRA (Texas Labor Code Chapter 21)…………………………………………………1

## <u>Table of Authorities</u>

<u>**Pages**</u>

Tex. Occup. Code § 162.0021……………………………..…………………………………..14

The Texas Medical Act…………………………………………………………………………..14


**Other Authorities**

Fed. R. Civ. P. 11………………………………………………………………………...3, 19

Fed. R. Civ. P. 12(b)(6)………………………………...………………………1, 5, 15, 24

Fed. R. Civ. P. 12(f)………………………………………………………………………..18

Fed. R. Civ. P. 26…………….…………………………………………………………12

Fed. R. Civ. P. 37……………………………………………………………………2, 16, 19

Fed. R. Civ. P. 37(a)……………………………………………………………………..18

Fed. R. Civ. P. Rule 37(a)(5)(A)……………….…………………………………………..19

Fed. R. Civ. P. 37(b)(A)(iii)………………………………………………………………18

Fed. R. Civ. P. 30(d)(2)……………………………………………………………………19

Fed. R. Civ. P. 56…………………………………………………….…………1, 15-16, 24

Fifth Circuit Pattern Jury Instruction, Civil Cases No. 11.6. (2020)……………………………13

Local Civil Rule 7.1(a)…………………………………………………………………..18

> "[I]t is important that a district court resist the understandable temptation to engage in *posthoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable."

-   Justice Potter Stewart on behalf of the United States Supreme Court, *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421-22 (1978)

## I.    SUMMARY OF ARGUMENT

Defendants' rationale for seeking a $1 million dollar attorney fee judgment against Dr. Thomas is unjustified under well-established case law.

This Court denied Defendants' Rule 12(b)(6) motion to dismiss Dr. Thomas' retaliation and race and intersectional discrimination claims under Section 1981, Title VII and the TCHRA, and did not deem the two claims it did dismiss as frivolous or pled in bad faith. Dr. Thomas is appealing the district court´s Rule12(b)6 and 56 rulings to the 5th Circuit Court of Appeals. Time will tell whether the 5th Circuit reverses these rulings or finds that the district court impermissibly drew factual inferences in Defendants' favor[1] while discrediting or ignoring facts favorable to Dr. Thomas' claims.[2] Even if the dismissal of Dr. Thomas' claims stands, Dr. Thomas' claims nonetheless had a reasonable basis, were supported by both evidence and case law, and in no way reflect the level of frivolity or unreasonableness that has resulted in other defense fee awards.

---

[1] For example, the Court inferred that the event reports about Dr. Thomas' conduct and demeanor were all true despite significant evidence contradicting that inference. (ECF # 85 at PageID 7867, 7873-74, BN Dep. 140:8-19, 159:9-18, 165:7-22); (ECF # 85 at PageID 7800 & 7804, LR Dep. 131:21-23, 145:20-24) (ECF # 85 at PageID 7754, RR Dep. 153:3-13) (ECF # 85 at PageID 7960-7974, LW Decl. ¶ 15-23, 33, BF Decl. ¶¶ 7-8, 19-24, LW Decl. ¶ 15-23, 33, JK Decl. ¶¶ 9, 12-14).

[2] For example, when evaluating Dr. Thomas' retaliation claim, the Court disregarded the timing of Dr. Thomas' first ever written complaint of discrimination, and that this September 27, 2019 complaint was received by and lodged against the very individuals who thereafter imposed even worse adverse terms on him. (ECF # 85-2at PageID 8447-8453, 9/27/19 Thomas E-mail).

Defendants are simply wrong in asserting that this case mirrors *Rooney*, an unpublished 1995 Southern District of Ohio case that did not involve any civil rights allegations but instead reflected a doctor's attempt to contest an adverse professional review action through unfounded anti-trust theories subject to immunity provisions of the Health Care Quality Improvement Act (HCQIA).[3] Instead, this case, resembles *Muzquiz,* a 1995 6th Circuit case in which a Mexican-American doctor raised civil rights claims that, while ultimately unsuccessful, were never subject to HCQIA immunity. *See Muzquiz v. W.A. Foote Memorial Hosp., Inc.*, 70 F.3d 422, 432-33 (6th Cir. 1995). There, the 6th Circuit denied the hospital's motion for attorney fees and found that the doctor's discrimination claims were not frivolous but rather grounded in statements made to him during his review process and irregularities in the review process. *Id.* As argued *infra* in Section III(A)(ii), Dr. Thomas' claims are similarly well-grounded in statements made to him about his race and protected activity, and irregularities that admittedly occurred during his review process.[4]

Defendants are not entitled to fees under *Christianburg*, but they nonetheless request this Court to ignore that standard by including in their motion complaints about discovery issues that the Court already ruled on, sometimes in Dr. Thomas' favor, and sometimes in Defendants' favor, but never awarding either party Rule 37 fees. A fair chronology shows (1) that Defendants' tactics lead the Court to grant Dr. Thomas' Motion to Compel the production of unredacted comparator evidence but caused Dr. Thomas to sit for his first deposition without access to that critical information; (2) that the parties resolved many subsequent discovery disputes through mutual

---

[3] Civil rights claims are not subject to HCQIA immunity. 42 U.S.C. § 1111(a)(1)(D). However, Rooney's anti-trust suit was, and he lacked any basis to challenge the hospital's immunity, but still asserted one anti-trust claim in defiance of clear precedent, and another anti-trust claim that was fatally flawed because the hospital did not provide the product at issue. *Rooney v. Med. Ctr. of Chillicothe,* C2-91-1100 (S.D. Ohio, March 8, 1995) (Judge Beckwith).

[4] ECF #83 at PageID 6483-6484, D's Appx. 98-99, Davis Decl. at ¶¶ 11-16.

agreement; and (3) that the Court, in denying Defendants' Motion to Strike Plaintiff's Supplemental Interrogatory Responses, already found that Dr. Thomas did not seek to unreasonably expand the scope of the case at the end of discovery as alleged.

For two other reasons, Defendants' specific request for attorney fees under the HCQIA should be denied. First, Defendants' admittedly "far from perfect" event reporting system that "can, and did break down in numerous places"[4] denied Dr. Thomas the due process guarantees he was entitled to receive in order for the HCQIA to apply. Second, Defendants failed to ever put Dr. Thomas on notice of their claim for fees under the HCQIA, thus waiving that claim.

Defendants' assertion that Plaintiff's claims are frivolous lacks credibility considering none of the 16 attorneys staffed on the case ever wrote to Plaintiff a Rule 11 letter or plan to seek a recovery of fees at any point during the pendency of the case. Defendants' motion for fees is itself frivolous, and Dr. Thomas prays that this Court follow the cardinal principle set forth in the introductory quote to this brief, deny Defendants' motion for fees in its entirety, and award Dr. Thomas fees spent responding to Defendants' unreasonable and groundless motion.

## II.    LEGAL STANDARD

"[A]ttorney's fees for prevailing defendants are presumptively unavailable unless a showing is made that the underlying civil rights suit was vexatious, frivolous, or otherwise without merit." *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001). This same strict legal standard applies to a prevailing defendant's request for attorney fees under the civil rights act statutes at issue in this case and under the Health Care Quality Improvement Act (HCQIA). *See Ubiñas-Brache v. Dallas County Medical Society,* 261 S.W.3d 800, 804 (Tex. App. 2008) ("Federal courts applying the HCQIA have found instructive the case authority addressing the award of attorney's fees under similar language in Title VII of the Civil Rights Act of 1964."); *See Also Obey v. Frisco Med Ctr,*

*LLP,* Case 4:13-cv-00656 *(*E.D. Tex. May 2, 2015*)* (Judge Amos L. Mazzant III) (deciding defendants' request for HCQIA and §1988 attorney fees under the same 5th Circuit standard).

The only substantive difference between the fee-shifting provision of civil rights statutes and the HCQIA is that, under the HCQIA, the defendant must also have provided a statutorily-defined level of due process to the doctor against whom fees are sought, including: (1) starting with the reasonable belief the defendant's actions would further quality health care; (2) after first making a reasonable effort to obtain the facts of the matter; (3) after providing adequate notice and hearing procedures; and (4) in the reasonable belief the final actions were still warranted by the facts known at the end of the process. 42 U.S.C. § 11112(a). Even if each element is present, a prevailing hospital can still only obtain fees if a doctor's claims are "frivolous, unreasonable, without foundation, or brought in bad faith." *Ubiñas-Brache, supra*, 261 S.W.3d at 803, 805.

"The fact that the Plaintiff ultimately loses the case is not enough to justify an award of attorney's fees to the defendant." *Westfall v. Luna*, 516 F. Supp. 3d 602, 622 (N.D. Tex. 2021) (Judge Reed O'Connor). The United States Supreme Court's holdings in "*Christiansburg* and *Hughes* make it clear that in determining whether a plaintiff's action is frivolous or meritless, a district court *must* focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." *Jones v. Texas Tech University*, 656 F.2d 1137, 1145-47 (5th Cir. 1981).

"When considering whether a suit is frivolous, a district court should look to factors such as whether the plaintiff established a *prima facie* case, whether the defendant offered to settle, and whether the court held a full trial." *Myers v. City of West Monroe,* 211 F.3d 289, 292 (5th Cir. 2000) (citation omitted). "These factors are, however, guideposts, not hard and fast rules." *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 621 (5th Cir. 2020). Even when courts grant summary judgment

or find a plaintiff failed to establish a prima facie case, it remains improper to award fees when the plaintiff's claims had "arguable merit" in the form of supporting yet insufficient evidence or colorable but incorrect interpretations of the law. *Rudkin v. Roger Beasley Imps., Inc.*, 1:2017-CV-849-LY, at *3 (W.D. Tex. July 2, 2019) (Magistrate Judge Andrew A. Austin) ("...the fact that plaintiff failed to establish a *prima facie* case of discrimination does not necessarily mean that his claim was frivolous. Instead, a claim is considered frivolous where there is no evidence to support it.") (citations omitted), aff'd by 1:2017-CV-849-LY (W.D. Tex. Aug. 2, 2019) (Judge Lee Yeakel); *See Also Gomez v. McDonald's Corporation*, CA 3:03-CV-0076-R, at *10 (N.D. Tex. July 19, 2004) (Judge Jerry Buchmeyer) (denying defendant's fee motion despite plaintiff's failure to establish a prima facie case due to the defendant hiring another female to replace plaintiff).[5]

### III.    LEGAL ARGUMENT

#### A.    Plaintiff's Discrimination & Retaliation Claims and Are Not Frivolous

"[T]he fact that a plaintiff's claim received careful consideration by the district court may properly be taken into account in determining whether the claim was frivolous. *Jones supra*, 656 F.2d 1137 at 1145-47 (5th Cir. 1981) (finding a claim non-frivolous in part because the district court issued a 12-page long opinion giving careful consideration to each of the plaintiff's claims).

This Court ruled that Dr. Thomas' discrimination and retaliation claims at the 12(b)(6) stage of this preceding had both legal and factual merit in a detailed 22-page opinion. (ECF # 21, 6/28/21 Order). Subsequently, Defendants made two offers of settlement to Plaintiff, one prior to filing their summary judgment motions and one after Plaintiff filed his responses to Defendants'

---

[5] *See Also Anderson v. Harrison Cnty.*, 639 F. App'x 1010, 11-12 (5th Cir. 2016) (upholding the denial of defendant's fee motion where plaintiff's prima facie case failed because her proffered comparator was not similarly-situated); *Santamaria v. Dallas Independent School District*, No. 3:06-CV-0692-L, at *4-5 (N.D. Tex. Sep. 30, 2007) (Judge Sam A. Lindsay) (denying fees where plaintiff failed to prove a prima facie §1983 case but filed suit based on reasonable assumptions).

summary judgment motions. The legal and factual arguments Dr. Thomas presented in support of his claims in opposition to summary judgment also required the Court's careful consideration, as evidenced by the Court's detailed 33-page opinion. (ECF # 133, 5/2/22 Opinion & Order).

The fact that a district court denies a hospital's motion to dismiss and finds that a doctor pled a plausible § 1981 claim is persuasive evidence that the doctor's claims are not frivolous. *See Obey, supra.* No. 4:13-CV-00656, at *4 (E.D. Tex. May 2, 2015) (denying a hospital's motion for HCQIA attorney fees after granting summary judgment on plaintiff' § 1981 claim). Where "Plaintiff's claims consist of complex issues of discrimination and retaliation under both state and federal laws" and "Plaintiff provided some evidence" to support those claims, the mere fact that the court found the Plaintiff "could not. . . establish a prima facie case under Section 1981" and "found that Plaintiff's evidence was insufficient to overcome summary judgment, this finding does not mean that Plaintiff's claims were frivolous or groundless." *Id.*

### i.   Defendants concede that Dr. Thomas' retaliation claim is well-founded

Defendants' motion bullet-points certain aspects of Dr. Thomas' claims that they assert are frivolous or unreasonable. Notably absent from that list is any mention of Plaintiff's retaliation claim. (ECF # 138 at PageID 11165-11167). Defendants' failure to present any arguments as to how Dr. Thomas' retaliation claim is frivolous makes it improper to award Defendants any fees incurred defending that claim. *See Cunningham v. Burns*, No. 3:12-CV-1824-L, at *1 (N.D. Tex. Oct. 21, 2014) (Judge Sam A. Lindsay) ("Simply because Defendants are the prevailing parties and entitled to summary judgment does not entitle them to an award of attorney's fees.").

Indeed, at the summary judgment stage, this Court found that Plaintiff presented triable issues of fact on two out of three prima facie elements of his retaliation claim, engaging in protected activity and suffering a materially adverse action, and had to craft an argument as to why

the retaliation claim otherwise failed. (ECF # 133 at PageID 11080-11082).

In finding that Plaintiff did not establish the third prima facie element of a "causal connection," the Court pointed to a one-year gap between Plaintiff's first September 13, 2018 verbal complaint to Human Resources (HR) and the shortening of his credentials. (ECF # 133 at PageID 11802-11803). In the case of an even longer temporal gap, the Northern District of Texas denied a defense motion for attorney fees on a plaintiff's retaliation claim. *Lee v. Group 1 Software, Inc.*, No. 3:06-CV-0873-D, at *12 (N.D. Tex. Jan. 7, 2008) (Judge Sidney A Fitzwater) (denying fees even though the court found no causal connection due to a twenty-month lapse in time between plaintiff's protected activity and the adverse action). The same conclusion is warranted here because the "domino effect" theory that the Court acknowledges Dr. Thomas asserted is well-grounded in 5th Circuit case law and the fact Cook Children's began purposefully hiding its peer review activity from Dr. Thomas only after he made his initial complaint. *Mooney v. Lafayette Cty. Sch. Dist.,* 538 F. App'x 447, 454-55 (5th Cir. 2013); *See Also Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42-44 (5th Cir. 1992); (ECF # 84 at PageID 7623-7625, Plaintiff's Brief in Opposition to Cook's Summary Judgment Motion, Section II(F)).

Plaintiff also presented well-supported arguments that his renewed and more serious written protected activity, which was directed, not to HR, but instead at the very individuals who then kept shortening his credentials and imposing ever-increasing conditions on him, re-established a "triggering" causal connection closer in time to the adverse action. *See Starnes v. Wallace,* 849 F.3d 627, 635 (5th Cir. 2017) (reversing summary judgment despite the lapse of one year between the protected activity and termination because the employer felt the brunt of the protected activity two months prior to the termination); *Long v. Eastfield Coll.,* 88 F.3d 300, 306 (5th Cir. 1996) (the fact plaintiff complained about the same two individuals who moved to fire

*Plaintiff's Response to Defendants' Motion for Attorney Fees*                    7

her established a causal connection). Plaintiff´s reliance on statements made about his protected activity by Dr. Uffman and in the PAC memo was also well-grounded in case law. *See E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 245 (5th Cir. 2016) (saying "you know what they do to people who do stuff like this" evidenced retaliation); *McMillan v. Rust Coll., Inc*., 710 F.2d 1112, 1116 (5th Cir. 1983) (calling protected activity "contumacious behavior" evidenced retaliation).

### ii.    Dr. Thomas' discrimination claims are reasonably grounded in fact

This Court found that Dr. Thomas met two out of four elements of a prima facie discrimination case, and, even though the Court found other elements not met, Dr. Thomas' discrimination claims in this suit are just as well-grounded, if not more so, than the plaintiff's claims in *Muzquiz*, a 6th Circuit case in which a defendant hospital was denied attorney fees despite prevailing at the summary judgment stage of the case. *Muzquiz, supra,* 70 F.3d 422 at 432-33.

In *Murquiz*, the plaintiff's discrimination claims were grounded in the fact that (1) he was the oldest doctor and only Mexican-American doctor up for credentialing at the time; (2) his review process was unusually lengthy; (3) one reviewer made a remark about Mexico during the review process; (4) he was the only one to have the extensive proctoring conditions imposed on him; and (5) another doctor attested that this would not have happened if Plaintiff was not South American. *Id.* Similarly, Dr. Thomas' claims are reasonably grounded in the fact that he was the only African-American pediatric surgeon up for re-credentialing at the time, the only surgeon to repeatedly engage in protected activity, the only one to have the conditions he challenged imposed on him, and faced with many concerning comments that triggered his reasonable, good faith belief that he was being treated differently because he is a Black man. Those comments included:

(1)    A nurse alleged on September 6, 2018, in the midst of Dr. Thomas' December 2017 through December 2019 recredentialing review period, that many staff members felt Dr. Thomas

treated all nurses but black nurses poorly. (Ex. 1, ECF #85-1 at PageID 8286, 09/06/2018);

(2)     CCPN President W. Britt Nelson confirmed that the Dr. Thomas he had observed and worked with was not the same Dr. Thomas described in the event reports, and that there could be a conspiracy against Dr. Thomas that should be investigated (Ex. 1, ECF # 85-1 at PageID 8358);

(3)     A voting peer review delegate telling Dr. Thomas he had to work twice as hard as an African-American male at Cook Children's. (Ex. 1, ECF # 85 at PageID 7925, PT ¶ 6-7);

(4)     Another voting peer review delegate telling Dr. Thomas the e-mails he was sending complaining about discrimination were not making it easy for the hospital to continue his employment (Exh. 1, ECF # 85-2 at PageID 8476, 10/17/2019 Thomas Letter to PAD);

(5)     A third voting peer review member stating Dr. Thomas' "physical presence" was a valid reason for staff to be intimidated (Ex. 1, ECF # 85 at PageID 7751, RR Dep. 140:11-24);

(6)     The PAC issuing a memo stating that one of its own members was concerned the PAC's requirements could be viewed as "problematic" in light of Dr. Thomas' claims of discrimination (Exh. 1, ECF # 85-2 at PageID 8518, 01/23/2020 PAC Memo).

Dr. Thomas' good faith belief that his status as a Black male was at the root of the event reports and the hospital's response to the event reports finds further support in the hospital's failure to follow its policies. *See Sears v. Zions Bancorporation NA*, No. 21-10448 at *9 (5th Cir. June 2, 2022) (holding that an employer's failure to follow even non-mandatory policies can establish pretext); *See Nicholson v. Securitas Security Services USA, Inc.*, 830 F.3d 186, 191 (5th Cir. 2016) (reversing this court's grant of summary judgment in part because deviation from standard practices constitutes evidence of discrimination). The hospital violated policy when (1) HR failed to write a report or inform Dr. Thomas of the results of its supposed investigation into his September 2018 discrimination complaint; (2) the hospital failed to tell Dr. Thomas about or do

anything to investigate 17 of the 19 event reports for over a year despite it being policy to address such reports within weeks; (3) hospital leaders ignored their obligation to forward Dr. Thomas' new 2019 discrimination complaints to HR; (4) the hospital delayed initiating an investigation into these new 2019 complaints for over 3 months instead of investigating immediately per policy; and (5) the hospital rushed to make its final credentialing and employment decision before the investigation into Plaintiff's 2019 discrimination complaints had even concluded. (ECF # 84 at PageID 7623-25 & 7651-52, Section II(E), (F) & Section IV(B)(6)(b)(1) & (2)).

While the Court ultimately discounted the evidentiary value of these statements and actions, that does not mean Dr. Thomas did not have "an entirely reasonable ground for bringing suit." *See Christiansburg Garment Co. supra*, 434 U.S. at 422. The Northern District of Texas has acknowledged that in this era race discrimination is more "subtle" than "conspicuous," and "it is extremely rare for defendants "to admit in some documented form that an asserted rationale behind a discharge is really a pretext for an illicit motive." *Martin v. El Nell Inc.*, No. 3:03-CV-2209-D, at *16-17 (N.D. Tex. Sep. 7, 2005) (Judge Sidney A. Fitzwater) (denying fees even though plaintiff's race discrimination claim failed to survive summary judgment). As such, "before determining that a race discrimination claim is sufficiently baseless. . . as to warrant the imposition of sanctions, judges should appropriately account for the nature of the claim." *Id.*

The 5th Circuit in fact reversed a finding that a race discrimination plaintiff's claims were frivolous when plaintiff believed that statements made to him about President Obama were evidence of racial bias, even though the district court properly disagreed, finding the statements merely political instead. *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 349-50 (5th Cir. 2013) (reversing an award of attorney fees to defendants who obtained summary judgment).[6] Courts also

---

[6] *See Also Rudkin, supra.*, 1:2017-CV-849-LY, at *3 (W.D. Tex. July 2, 2019) (finding plaintiff's

routinely deny HCQIA fees to hospitals that prevail on discrimination claims, so long as there was some legitimate source for the dispute that arose between the hospital and doctor. *Jeung v. McKrow*, 264 F. Supp. 2d 557, 574 (E.D. Mich. 2003) (citing evidence of animosity between the doctor and administration when finding a discrimination claim non-frivolous); *Benjamin v. Aroostook Medical Center*, 937 F. Supp. 957 (D. Me. 1996) (finding an African-American surgeon's claims were not "wholly without merit" despite finding his complaints of mistreatment lacked accompanying evidence of discrimination), aff'd by 113 F.3d 1 (1st Cir. 1997).

Similarly, discrimination claims are not frivolous just because plaintiff's comparator proof fails, so long as the comparator theory was reasonable. *Anderson, supra*, 639 F. App'x at 11-12; *Santos v. Wincor Nixdorf, Inc.*, 1:16-CV-440-RP, at *1 (W.D. Tex. Mar. 25, 2019) (Judge Robert Pitman) (attorney fees denied where plaintiff offered "a theory of an appropriate comparator, although she did not submit any evidence in support."), aff'd No. 19-50046 (5th Cir. Aug. 7, 2019). Here, Dr. Thomas reasonably believed the Court would accept his comparators when viewing these facts in the light most favorable to him: (1) Defendants testified that they looked only at the 19 event reports filed during Dr. Thomas two year re-credentialing period; (2) one of his comparators was not ordered to counseling and allowed to switch to Vocera as the sole means of resolving double-digit event reports filed against him; (3) his other comparator faced no consequences for the double-digit event reports racked up both before and after he became medical director, and (4) the same re-credentialing standards apply to all doctors on staff regardless of whether they are also medical directors. (ECF # 84 at PageID 7632, fn 15) (ECF # 84, 7615, 7643-7645, Section II (A)(1) & (Section IV(B)(4)) (ECF # 83-2 at PageID 7215-22, Bylaws, Art. III, Art. IV Sec. 2-4, 7 & 12).

claims non-frivolous when they were "based upon comments about his transgender status…").

### a.  5th Circuit & Texas law support Dr. Thomas' adverse action allegations

Defendants conceded in the Joint Pretrial Order submitted to this Court that the question of "Whether Dr. Thomas resigned or was terminated" is a legitimate contested issue of fact in this case. (Ex. 2 at p. 14-15). Plaintiff consistently, in his Complaint, in his response to Defendants' summary judgment motions, and in the proposed agreed jury charge and joint pretrial order,[7] argued that he suffered the adverse action of termination. But Plaintiff's Complaint also clearly pled the facts underlying his alternative constructive discharge claim, including that he rejected an option to have his credentials continue under conditions he objected to as discriminatory and retaliatory. (ECF. # 1 at PageID 27-35, Complaint at ¶¶ 176-186, 189-190, 193-196, 198-199, 214-222, 226-227, and 230).[8] Both of these alternative assertions are justified under precedent.

In 2001, the 5th Circuit held that a reasonable jury could find that a plaintiff did not resign, but was instead terminated, even though the defendant claimed otherwise. *Mota v. University of Texas Houston Health Science Center*, 261 F.3d 512, 520 (5th Cir. 2001). In that case, the defendant denied plaintiff's request for a 6-month extension of his leave of absence and informed plaintiff that his failure to return from his original leave on time would constitute a resignation. *Id.* at 518. The 5th Circuit found that, "although the University asserts that Mota resigned, a jury could have found that it terminated him." *Id. at* 523. A similar legitimate debate exists in Dr. Thomas' case.

It is undisputed that Dr. Thomas *never* submitted a letter of resignation to Defendants. Similarly, Dr. Thomas made it clear he was not "waiving" any of his rights (which would include his right to a full reappointment) when objecting to the mandatory February 20, 2020 conditions.

---

[7] (ECF # 1 at PageID 32-35, Complaint ¶¶ 214-15, 219-20. 226, 230); (ECF #84 at PageID 7640, Section IV(B)(3)); (ECF # 103 at PageID 9677, 9681, 9686, 9690); (Ex. 2 at p. 3).

[8] It is ironic that Defendants allege Plaintiff's constructive discharge claim is frivolous because Plaintiff did not reference that term in his Complaint yet assert an HCQIA fee claims that they never mentioned in their Answer or Rule 26 disclosures.

(ECF # 85-3, at PageID 8589). CCPN President W. Britt Nelson in fact issued a February 26, 2022 letter in which he informed Dr. Thomas' of "the termination of your employment with CCPN." (ECF # 83-2, at PageID 6719). Dr. Thomas also contested that it was his decision to leave Cook in a March 13, 2020 e-mail sent to Defendants' Chief Legal Officer Joe Gallagher. (Ex. 3). Just because Defendants unilaterally decided that they would characterize Dr. Thomas' separation as a voluntary resignation if he did not abide by their ultimatum does not automatically make their self-serving designation true. (ECF # 83-2 at PageID 6715-6717, D's Apx. 330-332). It was Defendants' choice alone to proceed with the termination of Dr. Thomas' credentials and employment after Dr. Thomas objected to the ultimatum as discriminatory and retaliatory.

**b. Dr. Thomas relied on case law regarding demotions & loss of standing**

Defendants also argue Plaintiff's constructive discharge theory was unreasonable due to the prior dismissal of his hostile work environment claim and his admission that the outside counseling requirement didn't change his reporting structure. To the contrary, Plaintiff made a plausible argument supported in both law and fact that being subjected to internal supervision by a nursing director changed his reporting structure, standing, and prestige enough to constitute an adverse employment action. *See Adcock v. Sunquest Properties Inc.*, 421 F. App'x 446, 448-50 (5th Cir. 2011) (reversing a fee award where plaintiff raised "at least plausible arguments").

First, the Fifth Circuit Pattern Jury Instructions use the word "or" in the list of seven different aggravating factors that can support a constructive discharge claim because a hostile work environment is just one of seven different ways to prove constructive discharge. Fifth Circuit Pattern Jury Instructions (Civil Cases) No. 11.6 (2020). In opposition to Defendants' summary judgment motion, Plaintiff identified eight cases, including three 5th Circuit cases, two Northern District of Texas cases, and four Texas appellate cases that found sufficient evidence of

constructive discharge and/or demotions even in the complete absence of a hostile work environment. (ECF # 84 at PageID 7640-7643).[9] Ample legal support exists for plaintiff's position. Defendants are not entitled to fees solely because the Court disagreed with these arguments. *See Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1140-42 (5th Cir. 1983) (reversing a fee award in its entirety even though summary judgment was properly granted on plaintiff's constructive discharge claim, and plaintiff failed to make out a prima facie case on her failure to promote claim).

Second, Dr. Thomas has good reason to believe a trier of fact would distinguish between an outside counselor submitting mental health reports on Dr. Thomas and Defendants' internal nursing director monitoring and submitting reports on Dr. Thomas' interactions with nursing staff as he practiced medicine. The Texas Medical Act (TMA) prohibits the supervision of doctors by non-doctors and requires that doctors have medical independence. *See Gupta v. Eastern Idaho Tumor Institute, Inc.*, 140 S.W.3d 747, 752 (Tex. App. 2004) (the TMA prohibits "lay control" of the practice of medicine); *See* Tex. Occup. Code § 162.0021; (ECF # 85, at PageID 7838, P's Appx. 179-180, BN Dep. 24:6-14, 26:20-23). An outside counselor's only role is to provide mental health tools for a doctor to improve his own practice of medicine. The role of Defendants' nursing director, however, is to look out for her staff of nurses and satisfy the non-physicians above her in hospital administration, creating a material, internal, institutional shift in Dr. Thomas' reporting structure for a nursing director to replace his medical director in the role of monitoring his behavior. (ECF # 85, at PageID 7876, P's Appx. 217, BN Dep. 176:2-23, testifying it is the medical

---

[9] *See Young v. Southwestern Savings and Loan Assoc*, 509 F.2d 140, 143-44 (5th Cir. 1975); *Stephens v. C.I.T. Group/Equipment Financing, Inc.*, 955 F. 2d 2013, 1027-28 (5th Cir. 1992); *Guthrie v. J.C. Penney Co., Inc.*, 803 F.2d 202, 207 (5th Cir. 1986); *Garrison v. Tex. S. Univ.*, 2012 U.S. Dist. LEXIS 15912 at *9 (N.D. Tex. October 23, 2012); *Garza v. Mary Kay, Inc.*, 2010 U.S. Dist. LEXIS 84586, *11-12 (N.D. Tex. Aug. 17, 2010); *Gray v. City of Galveston*, No. 14-12-00183-CV, at *17-18 (Tex. App. May 21, 2013); *Passons v. University, Tx. at Austin*, 969 S.W.2d 560, 564 (Tex. App. 1998); *Ward v. Lamar Univ.*, 484 S.W.3d 440, 449 (Tex. App. 2016).

director's role to help a doctor with behavior issues and monitor a doctor performance).

**B.      Dr. Thomas Had a Reasonable Basis for the 2 Claims Dismissed at the 12(b)(6) Stage**

Although the Court disagreed, Dr. Thomas' Complaint and his Response to Defendants' Rule 12(b)(6) motion shows that Dr. Thomas' pleading of a hostile work environment was reasonable. (ECF # 1) (ECF # 17 at PageID 316-18, 323-25, 333-336). The assertion that Defendants created a workplace "permeated with discriminatory intimidation, ridicule and insult" sufficient to alter his employment finds support in cases highlighting the effect of false accusations and constant criticism and retaliation on employees. *Johnson v. Halstead,* 916 F. 3d 410, 417 (5th Cir. 2019); *Tex. Youth Comm'n – Evins Reg'l Juvenile Ctr. v. Garza,* No. 13-08-00527-CV, 2009 Tex. App. LEXIS 3143, at *32-33 (Tex. App.-Corpus Christi May, 7, 2009).

Also, Dr. Thomas' claims that he was "regarded as" disabled by Defendants was reasonably based in Defendants' insistence that Dr. Thomas needed to see a psychologist and attend a course for distressed physicians, even though this assumption that Dr. Thomas had a mental health impairment was falsely rooted in stereotypes. *See Rodriquez v. ConAgra Grocery Prods. Co.,* 436 F.3d 468, 481-2 (5th Cir. 2006) (agreeing that an employer improperly relied on "stereotypes and generalizations" when treating a diabetic as if he was disabled); *Leaumont v. City of Alexandria*, No. 13-2397, at *12 (W.D. La. Mar. 7, 2014) (Judge James T. Trimble) (finding a plaintiff's "regarded as disabled" claim non-frivolous when he asserted his employer's requirement that he undergo drug testing evidenced an assumption that he had an addiction); (ECF # 17 at PageID 316, 336-7) (ECF # 85-1 at PageID 8215, BN dep. 183:7-16, testifying the distressed physician course was intended to address "behavioral changes" caused by "stress").

**C.      Dr. Thomas Decided in Good Faith Not to Oppose Cychol & Merrill's Rule 56 Motion**

Defendants are not entitled to fees based on Dr. Thomas' good faith decision not to oppose

Cychol and Merrill's Rule 56 motions considering the Court did not dismiss Cychol or Merrill as Defendants in its Rule 12(b)(6) ruling (ECF # 21) when Plaintiff set out valid reasons for naming Cychol, who issued the February 20, 2020 letter that sealed Dr. Thomas' fate, and Merrill, who directly received discrimination complaints from Dr. Thomas and promised but failed to deliver intervention. (ECF # 17 at PageID 325, 323-34). Plaintiff did not get to depose Cychol until November 4, 2021, and Merrill until December 13, 2021. (ECF # 85-1 at PageID 8231; ECF # 85 at PageID 7661). When Cychol and Merrill then moved for summary judgment on December 15, 2021, Plaintiff could have reasonably opposed their arguments. *See Stratienko v. Chattanooga-Hamilton County Hosp. Auth*, No. 1:07-CV-258, at *12 (E.D. Tenn. May 27, 2009) (Judge Collier) (claims against individual doctors who played a role in plaintiff's suspension were not frivolous).[10] Plaintiff's exercise of judgment in not pursuing arguments that his counsel felt were a "close legal and factual call" weighs against, not in favor of, granting fees. (ECF # 71 at PageID 5575); *Dean, supra,* 240 F.3d at 510 (5th Cir. 2001) (voluntarily withdrawing claims is "the prudent thing to do" if problems of proof become apparent).

**D.    None of the Discovery Issues Raised by Defendants Warrant a Shifting of Fees**

All discovery issues in this case resolved without the Court ever issuing Rule 37 fee awards, and Defendants were able to present the Court a complete record upon which to make its summary judgment ruling. This demonstrates that nothing that occurred during discovery merits fee-shifting.

Much of Defendants' complaints about time expended on discovery in this case pertain to work they necessarily would have expended redacting documents in their fight to preserve the hospital's peer review privilege, a fight they continued even after plaintiff signed a confidentiality

---

[10] *See* Also *Hall v. Arkema, Inc.*, No.: 4:19-cv-02164, at *6-12 (S.D. Tex. Dec. 23, 2020) (Magistrate Judge Christina Bryan) (finding a joint employer claim non-frivolous even though the facts in the end showed defendant had no hiring, firing, disciplinary authority, or other control).

*Plaintiff's Response to Defendants' Motion for Attorney Fees*                                    16

agreement. (Ex. 4); (ECF # 34). Defendants are the ones who insisted on producing redacted documents, then voluntarily agreed to re-produce the documents to fix improper redactions. (Ex. 5).   Plaintiff should not pay for Defendants re-producing discovery with slightly different redactions they knew "still failed to provide an effective manner" for comparator physicians to be identified – leaving Plaintiff with no choice but to file a motion to compel. (ECF # 31 at PageID 660-65; ECF # 37); (ECF # 26, PageID 629, ¶ 14).

Defendants' lead counsel Geoffrey Harper delayed communicating with Plaintiff about discovery issues, that his own co-counsel Steve Stodghill wrote to him on July 7, 2021, "Geoff you need to put this to bed and talk to them." (Exs. 6, 7) (ECF # 23, 24). Instead of putting the issues to bed, Plaintiff was forced on August 9, 2021 to document a host of deficiencies in Defendants' initial production. (Ex. 8). On August 13, 2021, Defendants then voluntarily agreed in writing to a 3-day turn-around time for resolving redaction problems, yet now complain about how quickly they had to work despite failing to honor that agreement. (Ex. 5 at p. 2) (ECF # 31 at 664). Plaintiff continued to document deficiencies in Defendants' production on September 14, 16 and 17, 2021. (Ex. 9). Over 8 months after discovery began, Defendants admitted in the parties' October 1, 2021 Joint Motion to Modify Scheduling Order that "Cook Children's had not completed its document production" and still needed "to cure" the problem and "make sure that Plaintiff receives the information he needs to prosecute his case". (ECF # 26 at PageID 629, ¶ 14). Defendants also admitted that Dr. Thomas "would at this point be prejudiced by having to proceed with depositions without having the benefit of the time to review evidence that is still being organized and identified regarding similarly-situated non-African American physicians." [ECF # 26 at PageID 630, ¶ 16). Yet, the Court gave the parties a 3-week extension instead of the 4 months requested (ECF # 30), and Dr. Thomas had to proceed with depositions despite this prejudice.

Plaintiff's motion to compel detailed with supporting documentation that Defendants had failed to produce reliable comparator data, produce a privilege log, and r provide usable responses to Plaintiff's interrogatories – and the Court agreed by granting Plaintiff's motion. (ECF # 31 at PageID 660-65; ECF # 37). Despite Defendants' hiding for 8 months behind a knowingly faulty privilege argument[11] that caused prejudice to Plaintiff, the Court did not award Plaintiff Rule 37(a) fees for their successful motion to compel, and likewise denied Defendants' Rule 37(a) request for attorney fees for having spent "hundreds of hours gathering and redacting documents to protect the confidentiality of the sensitive medical peer review materials." (ECF # 34 at PageID 1378, ECF # 37 at PageID 1685). Defendants' improper attempt to reverse that ruling should be denied.

Likewise, the Court should not reverse Magistrate Judge Ray's ruling which denied Defendants' request for fees under Fed. R. Civ. P. 12(f) and 37(b)(A)(iii) as part of their failed Emergency Motion For Extension of Time to File Dispositive Motions and Motion to Strike.[12] (ECF # 53; ECF # 67 at PageID 4388). Defendants argued that the supplemental interrogatory responses Plaintiff served in October, November, and December 2021 "dramatically" expanded the scope of the case and impeded their ability to timely file for summary judgement. (ECF # 53 at PageID 2190-93).[13] The Court rejected this argument and ruled that Plaintiff was within his

---

[11] (ECF # 37 at PageID 1685, fn. 2); (Ex. 10, 08/10/2021 Harper E-mails, writing at 3:12pm that "the other side just discovered that peer review privilege is not accepted in federal court" yet sending a 3:15pm e-mail giving plaintiff's counsel no option other than continued redactions).

[12] Defendants violated Local Rule 7.1(a) by failing to confer before filing that motion, and when Plaintiff's counsel attempted to confer with Defendants as ordered by the Court, Defendants' counsel, Mr. Harper responded, "What are you talking about? What motion?" and called her "obtuse" for trying to confer. (ECF # 65-1 at PageID 4318, 4311-17) (ECF # 57 at PageID 2771).

[13] Defendants insisted that Plaintiff respond in detail to Interrogatories Nos. 8 and 9, which broadly requested he identify "each and every act, omission, event, incident, and/or course of action that [Plaintiff] contend[s] is illegal discrimination" and "retaliation" (Ex. 11 at p. 1-2), and cannot credibly complain about having to review the responses they requested.

rights to: (1) serve additional discovery requests on October 15, 2021; and (2) timely supplement his discovery responses on November 15 and December 9 and 12, 2021. (*Compare* ECF # 67 at PageID 4388 to ECF # 53 at PageID 2191-92). Again, Defendants were denied fees. (ECF # 67).

Next, Defendants agreed to resolve and withdraw their November 15, 2021 motion to reopen Plaintiff's deposition, including their attendant request for fees. Prior to filing their motion, Defendants hadn't made Plaintiff's counsel aware of their specific requests for re-opening the deposition, once the parties did confer, Plaintiff immediately agreed to every single request except Defendants' request for fees. (ECF # 51) (Ex. 12). Defendants then notified the Court that (a) the parties had resolved the matter and (b) there was no need for the Court to rule on the motion, which had included their Rule 30(d)(2) and 37(a)(5)(A) request for fees. (ECF # 51, #52; ECF # 47 at PageID 2001). The Court then cancelled the motion hearing. The Court should not now revisit Defendants' waiver of their fee request as there is no open Rule 11, Rule 37, or §1927 motion.

After reaching this agreement with Defendants on November 16, 2021, Plaintiff promptly offered deposition dates on November 19, 2021. (ECF # 73-2 at 5848-5849). Defendants ignored that e-mail for weeks and waited until Plaintiff's counsel was finalizing his January 5, 2022 summary judgment responses to demand different dates.[14] (ECF # 73-2 at PageID 5843-5847). On January 13, 2022, Defendants filed a new motion to compel Dr. Thomas' appearance, the Court decided to resolve the issue quickly, scheduling a hearing less than 16 hours after Defendants' filing. leaving Plaintiff unable to submit a responsive brief. (Ex. 13). After the Court considered Plaintiff counsel's arguments at the hearing, including the key point that Dr. Thomas still did not have access to comparator information, the Court limited its ruling to ordering Plaintiff to timely

---

[14] As set forth in Plaintiff's Objection to Defendants' Bill of Costs, when it suited them, Defendants ignored Plaintiff's requests about discovery matters for months. (ECF # 144, 144-1).

appear for his re-opened deposition, did not issue any sanctions, and agreed the parties should confer about Dr. Thomas' access to comparator information. (ECF # 74).

Still, it took much effort for Plaintiff's counsel to finally obtained a limited agreement from Defendants that Dr. Thomas could solely review the unredacted information about the two comparators identified in Plaintiff's summary judgment response. (Exs. 14, 15). Rather than give Dr. Thomas any other access, Defendants voluntarily agreed not ask Dr. Thomas questions about information that remained unavailable to him under "Attorneys Eyes Only" designations. (Ex. 15 ¶ 4). Defendants took the time they needed to re-depose Dr. Thomas including re-asking questions previously asked, and have not once complained of not obtaining the information they needed. Defendants then supplemented their pending motions with Dr. Thomas' new testimony which the Court cited in its summary judgment ruling. (ECF # 97-1at Paged ID 8893, PT Dep. 346:20-347:5) (ECF # 96) (ECF # 133 at PageID 11071).

**E.    Defendants Failed to Place Plaintiff on Notice of the HCQIA Claim, Thus Waiving It**

As a general rule, a party must "put its adversaries on notice that attorneys' fees are at issue in a timely fashion or waive that claim." *United Industries, Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 765 (5th Cir. 1996). A pleading for "costs" does not count; the pleading must specifically request attorney fees. *Id.* Despite this rule, Defendants did not request an award of attorney fees in their Answer in this case. (ECF # 22 at PageID 576-577).

An exception to the pleading rule does exists if a defendant relies on the very statute the plaintiff sued under to seek fees, but here Defendants seek fees under the HCQIA, an entirely different statute than the statutes that form the basis of Plaintiff's civil rights claims. *Cf. Solferini v. Corradi U.S.*, No. 20-40645, at *5-6 (5th Cir. Aug. 13, 2021) (finding a plaintiff could not claim surprise when defendant disclosed its intent to seek fees in its initial disclosures and sought fees

under the same subrogation statute plaintiff sought fees under). While pleading defects can also be cured by later filings, "a party must at a minimum "put its adversaries on notice that attorneys' fees are at issue." *Al-Saud v. Youtoo Media, L.P.*, 754 Fed. Appx. 246, 255-256, No. 17-10622, at \*14-15 (5th Cir. Oct. 22, 2018) (finding a specific request for fees under a contract provision in an opposition to summary judgment motion and joint pretrial order cured the prior pleading defect).

Here, Defendants never mentioned the HCQIA or seeking fees under the HCQIA—not in their Answer, initial disclosures, summary judgment motions or briefs, nor in the joint pretrial order the parties submitted to the court—and thus failed to ever place Plaintiff on notice of the HCQIA fee claim prior to this Court's entry of judgment. (ECF # 22); (Ex. 16 at p. 9) (Ex.17 at p. 12) (ECF # 58 at PageID 2773-2774) (ECF # 59 at PageID 2777-2778) (ECF # 80 at PageID 6335, ECF # 81 at PageID 6381) (Ex. 2). This lack of notice severely prejudiced plaintiff because HCQIA fee determinations depend on a completely different set of factual considerations than Plaintiff's civil rights claims. *See Peterson v. Bell Helicopter Textron, Inc.*, 806 F.3d 335, 340-41 (5th Cir. 2015) (finding a post-judgment request for injunctive relief prejudiced defendant when defendant geared its entire discovery and trial strategy solely on a claim for monetary damages); *See Wilson v. William Hall Chevrolet, Inc.*, 871 F. Supp. 279, 282-83 (S.D. Miss. 1994) (denying a request for fees that was "unusual for the type of claim in question" due to lack of notice to defendants).

Specifically, Dr. Thomas had no opportunity to direct discovery towards those elements, file a plaintiff's motion for summary judgment, or seek a jury trial on elements in material dispute. *See* 42 U.S.C. §§ 1112(a), 11113 ; *See Singh v. Blue Cross/Blue Shield of Massachusetts, Inc.*, 308 F.3d 25, 33-36 (1st Cir. 2002) (finding the HCQIA "contemplates a role for the jury, in an appropriate case, in deciding whether a defendant is entitled to HCQIA immunity); *See Chudacoff v. University Medical Center of Southern Nevada*, 609 F. Supp. 2d 1163, 11688 (D. Nev. 2009)

(holding it "was inappropriate to resolve the HCQIA matter at the motion to dismiss stage, as the issue turned on questions of fact" and then granting a plaintiff's motion for summary judgment finding the hospital did not meet the HCQIA elements). Defendants' request for HCQIA fees is thus procedurally defective for lack of notice and resulting prejudice to Dr. Thomas.

F.    **Defendants Cannot Obtain HCQIA Fees Due to Their Broken Review Procedure**

Unlike civil rights statutes, the HCQIA statutorily requires that a hospital conduct an objectively reasonable investigation into the facts and provide a doctor notice and a hearing before taking adverse professional actions. *See Smigaj v. Yakima Valley Mem'l Hosp. Ass'n*, 269 P.3d 323, 333-36 (Wash. Ct. App. 2012), petition for reviewed denied by 278 P.3d 1112 (Wash. 2012) (under the HCQIA, the hospital's "failure to interview hospital physicians and nurses, and the chair of the hospital's ob/gyn department, constituted an unreasonable investigation…" and "the informal procedure process used here failed to provide Dr. Smigaj with adequate hearing and notice.).

Here, Defendants admit the hospital's process was broken and flawed. (ECF #83 at PageID 6483-6484, Davis Dec. ¶¶ 11-16); (ECF # 80 at 6293). The hospital failed to inform Dr. Thomas about 15 out of the 19 event reports for 6 to 20 months after they were filed which impaired the hospital's ability to investigate, and ultimately the hospital did nothing to verify whether the reports were true or false. (ECF # 84 at PageID 7623-25 & 7651-52, Section II(F)) (ECF # 85 at PageID 7727-28, RR Dep. 48:1-49:1, "we did not track each and every report to see if it was true or false") (ECF # 85 at PageID 7826-27, LR Dep. 235:20-235:23, 236:22-24, 237:22-238:8, "we did not try to go through" to determine the validity of the reports); (ECF # 85-1 at PageID 8189, 8197, DB Dep. 77:1-24, 110:6-12, 111:3-7, "we did nothing" to investigate). These abject failures prove that no reasonable effort was made to learn the facts or, at minimum, create a material dispute of fact such a jury would need to decide whether such an effort was made. *See Stratienko, supra*, No.

1:07-CV-258, at *8 (E.D. Tenn. Sep. 8, 2008) (a reasonable jury could find a hospital failed to obtain facts where they failed to interview witnesses to an altercation and uncover likely reasons for the altercation); *Brown v. Presbyterian Healthcare Services*, 101 F.3d 1324, 1333-34 (10th Cir. 1996) (a reasonable jury could find two hours of deliberation over two of the doctor's cases was an inadequate investigation); *Cf. Poliner v. Texas Health Systems*, 537 F.3d 368, 380 (5th Cir. 2008) (finding no reasonable jury could find a failure to obtain facts when the hospital consulted with an expert and relied on witnesses who observed the procedures and reviewed relevant records).

Defendants themselves admit they failed to provide Plaintiff the notice and hearing that the HCQIA requires, but argue an exception applies because the option they gave plaintiff to voluntarily accept conditions did not count as an adverse professional action. (ECF # 138 at PageID 11162). However, Federal courts have disagreed, and found that a hospital must provide notice and a hearing even when giving a doctor a voluntarily option to avoid a reportable adverse action. *Miller v. Huron Reg'l Med. Ctr., Inc.*, 145 F. Supp. 3d 873, 888, 882, 878-79 (D.S.D. 2015), jury verdict upheld by 936 F.3d 841 (8th Cir. 2019). Defendants' own by-laws also define a denial of reappointment as an adverse recommendation entitling a doctor to the type of formal full "Fair Hearing" that Dr. Thomas never received. (ECF # 83-2 at PageID 7272, 7273, Bylaws Article XI, Sec. 1, 2(a)(2), 3(B)) *See Osuagwu v. Gila Reg'l Med. Ctr.*, 850 F. Supp. 2d 1216, 1239 (D.N.M. 2012) (finding a hospital failed to provide a "procedurally fair hearing" because plaintiff was "not given a fair opportunity to confront and cross-examine" the anonymous individuals who submitted the adverse reports). Defendants' maneuvering to avoid giving Dr. Thomas a Fair Hearing is only more proof they did not care about reasonably ascertaining the facts as required by the HCQIA.

## G.    __Defendants Fail to Segregate Their Fees and Seek Excessive Fees__

Even if the Court finds any aspect of Dr. Thomas' litigation frivolous, the Court must then

"determine whether the fees requested would not have accrued but for the frivolous claim." *Fox v. Vice*, 563 U.S. 826, 839 (2011). Here, Defendants have not "made the distinctions that *Fox* requires…between fees incurred defending frivolous claims and…nonfrivolous claims." *Russ v. Memphis Light, Gas & Water*, No. 14-02365 at *13-16 (W.D. Tenn. June 12, 2017) (Judge Samuel H. Mays, Jr.). aff'd No. 16-6570 (6th Cir. 2017). Rather, Defendants seek a windfall, and flat percentage of all of their fees regardless of the source. *Fox v. Vice*, 563 U.S. at 837 (an award cannot make a party "better off…because they were subject to a suit including frivolous claims").

Defendants would have reviewed Plaintiff's Complaint, filed a Rule 12(b)(6) and Rule 56 motions and spent all of the time that they did on discovery and other tasks even if the only claims in the case had been those that survived careful scrutiny at the 12(b)(6) stage of this case. (ECF # 21, 6/28/21 Order). Defendants cannot show that any specific time was spent solely due to allegedly unreasonable legal arguments or discovery conduct. *Cf. Greco v. Velvet Cactus, LLC*, No. 13-3514 at *11 (E.D. La. Nov. 25, 2014) (Judge Sara S. Vance) (awarding defendants $180 for an hour spent opposing a frivolous legal argument); *Cf.  Knoth v. Keith*, No. 5:18-cv-49-DCB-MTP, at *4 (S.D. Miss. Sep. 30, 2020) (Magistrate Judge Michael T. Parker) (awarding defendants "$1,340.00 for time specifically spent on plaintiff's re-opened deposition). The proper result in such circumstances is to deny Defendants' fee request entirely. *See Badgerow, supra*, 974 F.3d 610 at 622 (finding a fee award improper when only one claim was meritless and only one of counsel's actions was futile); *See Broussard v. LaFayette Consol. Gov't*, No. 6:13-cv-2872, at *9-10 (W.D. La. Jan. 29, 2015) (Magistrate Judge Hanna) (finding it impossible to award Defendants fees under *Fox* as all of counsel's efforts were directed at all of plaintiff's claims), aff'd by No. 6:13-cv-2872, at *1 (W.D. La. Feb. 19, 2015) (Judge Doherty).

It further weighs against Defendants' fee request that they seek excessive hourly rates

(ranging from $1,1175 for Defendants' lead counsel who graduated in 1992 to $660 per hour for a 2020 graduate) that are not in line with rates awarded to other employment lawyers in this district. *Compare* ECF # 138-1 at PageID 11176-11177 to *Calahan v. BMJ Food Corp.*, No. 4:15-cv-00251-O at *11 (N.D. Tex. June 14, 2016) (Judge Reed O'Connor) (awarding $495 per hour to an employment lawyer who graduated in 1995 and $295 to a 2012 graduate).

Moreover, perhaps due to the extent of available insurance coverage (Ex. 18), rather than exercise billing judgment, Defendants' counsel engaged in rampant block-billing, overstaffed the case with 16 attorneys, and present many vague and redacted time entries. (Exh. 19 at ECF # PageIDs 11184-11291, 11398-11499). Plaintiff's counsel has marked examples of such improper billing entries on approximately 200 out of 414 pages of Defendants' invoices. *Id.* To evaluate the reasonableness of time spent or fairly estimate the amount of duplicative and excessive work is impossible. *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund,* 2011 WL 487754 at *4 (N.D. Tex. Feb. 11, 2011) (Fitzwater, C.J.) (block-billing impairs the evaluation of the reasonableness of fee requests), aff'd, 420 Fed. Appx. 364 (5th Cir. 2011); *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (excessive, redundant, and unnecessary" hours are not reasonable).

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety, and award Plaintiff fees for having to respond to the motion.

Alternatively, should the Court disagree and find grounds to award fees based on the re-opening of Plaintiff's deposition, Plaintiff prays that the Court limit any fee award to $2,796.75 for the 5.65 hours Defendants' attorney Ms. Cardelle Spangler spent taking Plaintiff's re-opened January 24, 2022 deposition (ECF # 97-1 at PageID 8852, 9:03am to 2:42pm) at a rate of $495 per hour, the rate this Court awarded in *Calahan* to another 1995 graduate.

DATED**:**  June 6, 2022                          Respectfully submitted,

                                                **STACEY GRAY PC**

                                                */s/ Stacey M. Gray*
                                                Stacey M. Gray
                                                Bar No. 2985943NY (Admitted *Pro Hace Vice*)
                                                sgray@staceygray.com
                                                60 East 42 Street, Suite 4600
                                                New York, NY 10165
                                                Telephone: (212) 227-9163
                                                Facsimile: (212) 227-8845

                                                **TREMAIN ARTAZA, PLLC**

                                                */s/ Christine A. Hopkins*

                                                Christine A. Hopkins
                                                Texas State Bar No. 24095768
                                                christine@tremainartaza.com
                                                4925 Greenville Ave, Ste 200
                                                Dallas, TX 75206
                                                Telephone:  469-573-0297
                                                Facsimile:  214-254-4941

                                                **SANFORD FIRM**

                                                */s/ Brian Sanford*
                                                Brian Sanford
                                                Texas State Bar No. 17630700
                                                bsanford@sanfordfirm.com
                                                1910 Pacific Avenue, Suite 15400
                                                Dallas, TX 75201
                                                Telephone: (214) 717-6653
                                                Direct: (464) 361-9111
                                                Facsimile: (214) 919-0013

                                                /s/ Elizabeth Jane "BB" Sanford
                                                1910 Pacific Avenue, Suite 15400
                                                Texas State Bar No. 24100618
                                                esanford@sandordfirm.com
                                                Dallas, TX 75201
                                                Telephone: (214) 717-6653
                                                Direct: (464) 361-0122

*Plaintiff's Response to Defendants' Motion for Attorney Fees*                                         26

Facsimile: (214) 919-0113

***ATTORNEYS FOR PLAINTIFF***

## CERTIFICATE OF SERVICE

I hereby certify that, on June 6, 2022 I electronically submitted the foregoing document to the Clerk of the Court using the ECF system, which will transmit a Notice of Electronic Filing to all counsel of record.

*/s/ Christine A. Hopkins*