IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| PATRICK THOMAS,<br><br>    Plaintiff,<br><br>v.<br><br>COOK CHILDREN'S HEALTH CARE SYSTEM et al.,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§  Civil Action No. 4:20-cv-1272-O<br>§<br>§<br>§<br>§<br>§<br>§ |

### REPLY IN SUPPORT OF DEFENDANTS' MOTION
### FOR AWARD OF DEFENSE EXPENSES AND ATTORNEYS' FEES

Steven H. Stodghill
Tex. Bar No. 19261100
sstodghill@winston.com
Geoffrey S. Harper
Tex. Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Tex. Bar No. 24069747
mgaddis@winston.com
Claire E. Dial
Tex. Bar No. 24116283
cdial@winston.com

**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
Telephone: 1-214-453-6500
Telefax: 1-214-453-6400

Cardelle B. Spangler
Ill. Bar No. 6242570
cspangler@winston.com
Admitted *Pro Hac Vice*

**WINSTON & STRAWN LLP**
35 West Wacker Drive, Suite 40
Chicago, IL 60601
Telephone: 1-312-558-5600
Telefax: 1-312-558-5700

*ATTORNEYS FOR DEFENDANTS*

Defendants file this reply and show the Court as follows

I. **Defendants are Entitled to Recover Attorneys' Fees and Expenses Under HCQIA.**

Plaintiff filed a complaint replete with lies and strategic omissions. Nevertheless, in an attempt to avoid the repercussions of his litigation decisions and conduct, Plaintiff argues that Defendants cannot recover under HCQIA because (a) they did not plead for relief in the answer and (b) Cook Children's peer review process failed to meet the statutory standard. Plaintiff's argument on both counts is incorrect.

A. **Defendants were not required to plead entitlement to fees under the HCQIA.**

In an effort to suggest that Defendants cannot recover under the HCQIA, Plaintiff's Response argues that a claim for fees must be specifically listed in a defendant's answer. This misstates the notice requirement for attorneys' fees requests in the Fifth Circuit. The Fifth Circuit requires only that the opposing party has timely "put its adversaries on notice that attorneys' fees are at issue." *United Indus., Inc. v. Simon-Hartley, Ltd.*, 91 F.3d 762, 765 (5th Cir. 1996). While "specifically pleading for attorneys' fees in the complaint" accomplishes this notice, so too does moving for attorneys' fees within fourteen days of judgment under Rule 54(d). *See id.* at 765–66 (vacating award of attorneys' fees because plaintiff waited until a year after final judgment to first move for fees (citing FED. R. CIV. P. 54(d)(2)(A))).

Indeed, for defendants, a Rule 54(d) motion typically is the only way to request fees because there is no separate cause of action for attorneys' fees. *Johnson v. Equifax Info. Servs., LLC*, No. 4:16-CV-00551, 2017 WL 1037588, at *1 (E.D. Tex. Mar. 17, 2017). Instead, for defendants, the "right to attorneys' fees is a defensive matter for frivolous claims." *Id.*; *accord* FED. R. CIV. P. 54(d)(2)(A); *United Indus., Inc.*, 91 F.3d at 766; *cf. also Williams v. Cordillera Commc'ns Inc.*, No. 2:13-CV-124, 2014 WL 6674087, at *1 (S.D. Tex. Nov. 24, 2014) ("[T]he [attorneys' fees provision at issue] is a defensive matter that, by statutory provision, is to be raised

by motion."). Indeed, asserting a "counterclaim for attorneys' fees is improper." *Johnson*, 2017 WL 1037588, at *1. Defendants appropriately placed Plaintiff on notice of their entitlement to fees by demanding fees within fourteen days of judgment in a Rule 54(d) motion. *See* Final Judgment (May 2, 2022), Dkt. 136; Defendants' Mot. for Award of Defense Expenses and Attorneys' Fees (May 16, 2022), Dkt. 138. Defendants waived nothing.

Further, Plaintiff's suggestion that he was unaware that HCQIA could be at issue is disingenuous. Dkt. 145 at 21–22. In his original complaint, Plaintiff admitted that Defendants "allowed [Plaintiff] to exercise his due process rights" in a professional review based on an alleged HIPPA violation. Original Complaint, at ¶ 56, Dkt. 1. And in his first set of requests for production, Plaintiff sought reams of documents and communications from the Peer Assistance Committee and the Joint Credentialing Committee relating to their review of Plaintiff. *E.g.*, Plaintiff Thomas' Frist Set of Requests for Production to CCMC at 18–19. Plaintiff was well aware that this case necessarily implicated Cook Children's professional review of him. Having failed to muster evidence that would rebut the presumption of a sufficient professional review under the HCQIA, *see* 42 U.S.C. § 11112(a), Plaintiff resorts to arguing lack of notice. Because that argument is not supported by either the law or the record, the Court should reject it.

### B. Defendants' Professional Review of Plaintiff Satisfied the Requirements of 42 U.S.C. § 11112.

In arguing that Defendants are not entitled to fees under § 11112, Plaintiff misrepresents the factual findings of this Court regarding Defendants' investigative process. Defendants' conduct constituted an objectively reasonable investigation. *See* Dkt. 133 at 7–11 (describing Cook's thorough investigation into the event reports). While Plaintiff attempts to point out minor "flaws" in Defendants' investigation, the summary judgment record clearly supports that "the totality of the process leading to the professional review actions evidenced a reasonable effort to

determine the facts." *Reed v. Franklin Parish Hosp. Service Dist.*, Case No. 04-1481, 2006 WL 3589676, at *6 (W.D. La. Dec. 11, 2006). Further, the cases cited by Plaintiff are all distinguishable, as the summary judgment record contains plenty of evidence that Defendants undertook a "reasonable effort to obtain the facts of the matter" through reviewing the event reports, speaking with nurses who interacted regularly with Plaintiff, and speaking directly with Plaintiff about the event reports on multiple occasions. *See* Dkt. 138 at 14 (discussing Defendants' efforts to obtain the facts); *cf. Brown v. Presbyterian Healthcare Services*, 101 F.3d 1324, 1334 (10th Cir. 1996) (noting that the defendant's review of only two of the plaintiff's charts did not constitute a reasonable effort to obtain the facts).

Additionally, Plaintiff's argument that Defendants failed to provide him with a hearing is futile, as § 11112 and Cook's bylaws each clearly state that such a hearing is not required when no adverse professional review action is taken. *See* 42 U.S.C. § 11112(c)(1)(A) (not requiring notice and a hearing "where there is no adverse professional review action taken"). Despite Plaintiff's repeated arguments otherwise, Defendants did not deny Plaintiff's reappointment; Plaintiff refused to accept Defendants' reasonable terms for his reappointment. *See* Dkt. 133 at 11–12. Unlike the cases Plaintiff cited, Cook's bylaws specifically state that a recommendation for shortened reappointment and the imposition of any conditions on reappointment are not considered adverse actions that would trigger Cook's hearing procedures. *See* Dkt. 63-3 at 65–66; cf. *Miller v. Huron Reg'l Med. Ctr., Inc.*, 145 F. Supp. 3d 873, 881 (D.S. D. 2015).

## II. **Plaintiff's Claims and Conduct were Frivolous and Unreasonable, Entitling Defendants to Attorneys' Fees.**

### A. **Plaintiff's conduct was unreasonable.**

Plaintiff's conduct throughout this litigation was unreasonable and designed to force settlement by increasing the cost of litigation. Thus, Defendants are entitled to recover their fees.

As an initial matter, Plaintiff incorrectly argues that Defendants should not be awarded attorneys' fees for his conduct because such fees were not previously sought or awarded during the litigation. There is no case law supporting such a position, as requiring a party to seek attorneys' fees for unreasonable or bad faith conduct during the litigation would render the terms of § 11113 superfluous. *See* 42 U.S.C. § 11113 (allowing recovery of attorneys' fees "if the claim, *or the claimant's conduct during the litigation of the claim*, was frivolous, unreasonable, without foundation, or in bad faith") (emphasis added). Further, such a condition on timing for seeking attorneys' fees for conduct would require parties to use the sanctions procedures described in the Federal Rules of Civil Procedure, which involve entirely different standards than those described by § 11113.

Notably, Plaintiff fails to deny Defendants' allegations regarding his unreasonable conduct during this litigation, and instead tries to shift the focus to Defendants' conduct. Plaintiff does not deny that his conduct (and that of his counsel) during his initial deposition was wholly unacceptable and evasive. Plaintiff also does not deny that he and his counsel regularly delayed in reviewing documents produced by Defendants and then required short deadlines for Defendants to correct perceived faults in the redactions on such documents. Plaintiff further does not deny that he constantly shifted his theory of discriminatory acts and comparators, changing his allegations of discrimination and comparators within days of the summary judgment deadline and again in his response to Defendants' motions for summary judgment. *See* Dkt. 63-2 at 402–481; *cf*. Dkt. 70-1. All of these actions were unreasonable and meant to harass and waste Defendants' resources.

Instead of denying Defendants' allegations regarding his conduct, which he could not truthfully do, Plaintiff tried to focus on Defendants' alleged bad acts. While Defendants

completely disagree with Plaintiff's allegations—even if they were true—they are completely irrelevant to Defendants' Motion.  Plaintiff has made no attempt to justify his frivolous and unreasonable actions.  Instead, Plaintiff makes false allegations against Defendants that are wholly unrelated to the matters at issue in this motion.  Defendants' actions did not cause Plaintiff to behave unacceptably during his deposition.  Defendants' actions further did not cause Plaintiff to unreasonably delay in reviewing production and constantly shift his theory for his claims.  Thus, his attempt to redirect the Court's focus away from his own actions is pointless.

> B.    **Plaintiff's Claims were Frivolous Based on Facts Known to Him at the Time of Filing but Omitted from his Complaint.**

Plaintiff's frivolous claims fall into four categories: his disability-discrimination claims, his hostile-work-environment claims, his retaliation claims, and his discrimination claims.  Each of these categories of claims is frivolous based on facts that Plaintiff knew at the time of filing his complaint.  Nevertheless, he proceeded with his complaint, obscuring the dispositive facts from the Court.  Indeed, ***had Plaintiff honestly pled the facts in this case in his Complaint, the Court would have disposed of the case at the motion to dismiss stage***.

Plaintiff's dismissed disability-discrimination claims were frivolous because Defendants never regarded him as having a disability.  Dkt. 21 at 19–22.  "Nothing in the Event Reports or complaints indicate that Plaintiff has a suspected mental health impairment."  *Id.* at 20.  Indeed, in his original complaint Plaintiff "did not claim Cook Children's regarded him as disabled."  *Id.* at 21.  Only later did he argue that the Peer Assistance Committee was meant only for physicians with disabilities and thus his appearance before the PAC implied that he had a disability.  Dkt. 17 at 24–25.  But Plaintiff knew very well that this was not the case, as he had appeared before the PAC before to address workplace behavioral issues, not any disability.  Plaintiff, however, declined to mention that fact in his complaint.  *See* Dkt. 1 at ¶¶ 29–232.

Plaintiff's dismissed hostile-work-environment claims were frivolous because nothing close to harassment ever occurred. Dkt. 21 at 17–19. Plaintiff pointed to the PAC procedures, policies, and communications as evidence of a work environment "both objectively and subjectively offensive that a reasonable person would have found hostile and abusive." *Id.* at 17; Dkt. 1 at ¶ 247. Plaintiff, however, knew that other "reasonable" physicians at Cook Children's similarly appeared before the PAC, with none finding the procedures "hostile and abusive." Dkt. 134 at 16–17. Indeed, Plaintiff himself had appeared before the PAC numerous times in the past. *Id.* at 3–5. His complaint, however, neither mentions these appearances nor alleges that they were harassing.

Plaintiff's discrimination claims were frivolous for the simple reason that there was no adverse employment action—he was not fired. *Id.* at 22. Plaintiff's complaint, however, obscured that fact from the Court. Dkt. 1 at ¶¶ 227–230. He later reverted to a baseless theory of constructive discharge despite the Court's earlier dismissal of his hostile-work-environment claims. *Compare* Dkt. 70-1 at 32–35, *and* Dkt. 72-1 at 29–32, *with* Dkt. 21 at 17–19. Plaintiff premised his constructive discharge on the conditions of his reappointment. Dkt. 70-1 at 32–35; Dkt. 72-1 at 29–32. He failed to disclose to the Court, however, that both he and his peers had accepted similar conditions for credentialing in the past. *Compare* Dkt. 1 at 214–16, *and* Dkt. 70-1 at 32–35, *and* Dkt. 72-1 at 29–32, *with* Dkt. 134 at 16–17. Plaintiff alternatively argued that he was demoted because he was required to meet with nursing administrators Valerie Gibbs and Orlando Chapa. Dkt. 70-1 at 33–34; Dkt. 72-1 at 30–31. Plaintiff's view that cooperating with nurse administrators constitutes demotion and evidences his disrespect for nonphysician staff and the frivolousness of his core theory of the case. *See* Dkt. 134 at 6 ("Many reports describe Thomas directing anger, sarcasm, or the 'silent treatment' toward the nursing staff.").

Finally, Plaintiff's retaliation claims were frivolous because he never offered any coherent theory of retaliation. *See id.* at 30. Instead, he bombarded Defendants with hundreds of new claims of retaliation just hours before his deposition, Dkt. 138 at 20–21, only to then rely on a few "small" allegations to oppose summary judgment. Dkt. 134 at 30. Retaliation was never a legitimate claim for Plaintiff but instead was merely an opportunity for him to harass Defendants in this litigation.

Simply put, Plaintiff's claims were all frivolous, and Defendants are entitled to attorneys' fees.

### III.     Defendants Seek Reasonable and Customary Fees.

In the final 1-1/4 pages of his Response, Plaintiff alleges that Defendants' fee award should be limited to $2,796.75 because the fees are excessive and not segregated. Plaintiff's position is improper for several reasons.

At the outset, it is critical to note that Plaintiff is 100% correct that the Court should only award Defendants fees incurred in defending against the frivolous claims and frivolous actions. Where Plaintiff misses the mark is his bold assertion that no fees–other than $2,796.75–were incurred in responding to frivolous claims. Plaintiff asserts that Defendants would have incurred the same fees reviewing the complaint, filing motions to dismiss and for summary judgement, and engaging in discovery even if the only claims in the case were non-frivolous. This assertion is both false and defies the standard for recovery. For example, Defendants would not have researched disability issues and drafted a motion to dismiss on that issue had Plaintiff not pled it. Furthermore, had Plaintiff not pled such utterly false facts as (a) that he was terminated (without mentioning his performance plan), (b) that all doctors received Event Reports and conduct complaints (while he knew that less than 2% of physicians actually received complaints), and (c) intentionally omitted the fact that he had been before the Peer Assistance Committee multiple

times previously without complaint, then the Court would not have had to decide the Motion to Dismiss assuming that the falsely pled facts were true and the entire case would likely have been terminated without any further action.

And while Plaintiff is also correct that Defendants have not provided a line-by-line itemization for each frivolous act and costs associated with same, Plaintiff fails to note that such action is not necessary, appropriate, or even possible at this stage. As the rules make clear, a court "may decide issues of liability for fees before receiving submissions on the value of services." FED. R. CIV. P. 54(d)(2)(C). And this procedure outlined by the federal rules is particularly appropriate here where the parties contest a plethora of different overlapping bad acts and causes of action. While Defendants can identify and support its fees and costs caused by each separate bad act, many of those fees would overlap and, of course, the calculation would suffer if the Court were to find that only some of the identified actions–but not all–justified an award of fees. As such, the appropriate course is for the Court to rule on the liability for fees (identifying which causes of action and litigation tactics support the award of fees) and then accept further submissions on the amount of such fees to the extent necessary. *See* FED. R. CIV. P. 54 advisory cmt. notes ("The Court is explicitly authorized to make a determination of the liability for fees before receiving submissions by the parties bearing on the amount of an award.").

Alternatively, as Defendants have argued and showed throughout the briefing, the Court can–and should–find that all of Plaintiff's claims were frivolous and pursued in bad faith. Indeed, as is undisputable at this stage, the Original Complaint in this case is so filled with untruths, deliberate omissions, and carefully crafted falsehoods that it is barely recognizable as the same lawsuit that Plaintiff presented at the summary judgment stage. Moreover, Plaintiff's undisputed bad faith litigation tactics were designed to increase Defendants' costs. In this circumstance, if

the Court agrees, Defendants have submitted their fees, with appropriate proof and support, for its requested award of $1,000,000.00.

## CONCLUSION

For the reasons set forth above and in Defendants' Motion for Defense Costs and Attorneys' fees, the Court should grant the motion and award Defendants $1,000,000.00 in expenses and fees. In the alternative, the Court should determine the acts and claims creating liability and order Defendants to submit its fee request for same within seven days of the Court's order.

Date: June 21, 2022

Respectfully submitted,

/s/ *Geoffrey S. Harper*

Steven H. Stodghill
TX Bar No. 19261100
sstodghill@winston.com
Geoffrey S. Harper
TX Bar No. 00795408
gharper@winston.com
John Michael Gaddis
Tex. Bar No. 24069747
mgaddis@winston.com
Claire E. Dial
TX Bar No. 24116283
cdial@winston.com

**WINSTON & STRAWN LLP**
2121 North Pearl Street, Suite 900
Dallas, TX 75201
T: 1-214-453-6500
Facsimile: 1-214-453-6400

Cardelle B. Spangler
IL Bar No. 6242570
CSpangler@winston.com
*Pro Hac Vice*

**WINSTON & STRAWN LLP**
35 West Wacker Drive, Suite 40
Chicago, IL 60601
T: 1-312-558-5600
F: 1-312-558-5700

***ATTORNEYS FOR DEFENDANTS***

## CERTIFICATE OF SERVICE

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's EM/ECF system on June 21, 2022.

/s/ *Geoffrey S. Harper*
Geoffrey S. Harper